## MARMADUKE S. ENSMINGER

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* JOHN W. TROVER.

1. CHANGE OF VENUE—*in proceedings by quo warranto—whether a matter of right, or discretion.* Upon an application for a change of venue in a proceeding by *quo warranto*, the party making the application showing all the facts requisite to the allowance of a change of venue, it is not a matter of discretion with the court to grant or refuse the application; but the party is entitled to a change of venue as a matter of right.

2. CONSTRUCTION—*of act of* 1861. . The act of 1861, giving the court discretionary power in that regard, in reference to certain criminal proceedings, does not embrace a proceeding by *quo warranto*, that not being criminal in its character.

3. BOUNDARIES—*of riparian owners.* The line of the riparian owner of land in this State, bounded by the Ohio river, extends at least to low water mark.

4. RIPARIAN OWNER—*of his rights between high and low water mark.* The riparian owner, thus having the title to the land between high and low water mark, and the right to the exclusive use thereof, has the right to establish a private wharf thereon, and make reasonable charges for its use by those navigating the river.

5. SAME. While the property of the riparian owner in the bed of the river to the *filum aquæ*, is subservient to the use of the public as a highway, for purposes of navigation, still the banks of the river are not under, or subject to, that servitude. To be entitled to the use of the banks, the right must be acquired by agreement, prescription, or grant.

6. SAME. The riparian owner having the right to the exclusive use of the banks to low water mark, a person navigating the river cannot land against the will of the riparian owner, and becomes a trespasser if he does so without his consent.

APPEAL from the Circuit Court of Alexander county; the Hon. JOHN OLNEY, Judge, presiding.

The opinion states the case.

Mr. WM. J. ALLEN, and Messrs. GREEN & GILBERT, for the appellant.

Messrs. JOHN F. McCARTNEY, H. K. S. O'MELVENY, D. T. LINEGAR, and LOUIS HOUCK, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a proceeding in the nature of a *quo warranto*, instituted in the Circuit Court of Alexander county, requiring appellee to show by what authority he collects tolls and tonage duties of, and controls the anchoring of vessels lying in the harbor of the city of Cairo. Appellant pleaded four several pleas. First, denying that he did exercise the office of wharf-master, nor did he use and enjoy the liberties, privileges and franchises in the manner and form as laid to his charge, and concludes to the country. By the second, that Edward Parsons and Samuel Staats Taylor, trustees of the Cairo City property, were the owners of the fee of certain property bordering on the Ohio river, and being the shore of the river to low water mark, at the city of Cairo, and of the wharf or landing place for vessels, and that it had been and was a private wharf, and that as such they were entitled to charge the navigators of the river reasonable compensation for using the wharf in loading and unloading vessels ; that the trustees, as owners and proprietors, gave public notice of the rates of charges for the use of the wharf, and appointed appellant their wharf-master, to collect the charges and take care of the wharf ; and that, as such private wharf-master, he collected the charges of vessels landing at the wharf in Cairo.

The third plea avers that certain persons were the owners in fee of a body of land extending to and bordering upon the Ohio river, and as such, laid off and platted the same in November, 1853, into lots and blocks of the city of Cairo, which was duly acknowledged and recorded ; that in 1866,

49—47TH ILL.

the plat of an addition to the city of Cairo was made by the owners in fee of another portion of the land. It avers that the present trustees derive title from the original proprietors, and that in no sale or conveyance have they, or those from whom they derive title, ever parted with the title to the strip of land lying between Levee street and the Ohio river, upon which this wharf has been established, and that they are the owners in fee of the wharf and the ground upon which it is maintained. The plea then avers the establishment of the wharf, and rates of charges, and the appointment of appellant wharf-master, as in the second plea, but more in detail and at large.

The fourth plea avers that Parsons and Taylor are the owners in fee of a strip of land between Levee street and the Ohio river, and that it was expressly reserved in laying out and plat-ing the city of Cairo, and that the fees and charges have been collected as stated in the second and third pleas.

Appellees filed a demurrer to the second, third and fourth pleas, which was overruled. And appellees thereupon filed a number of replications. By the first, it is averred that Levee street is a public highway, laid out upon the top of the bank of the Ohio river, and the high water line of the river is the outer edge of the street, and this street extends along the entire length of the harbor.

The second replication to these pleas avers, that the entire wharf is occupied by wharf and coal boats, the owners of which pay rent to Taylor and Parsons, so that vessels cannot land against the land of the wharf, and that appellant collected charges for landing against the wharf boats, and at places on the wharf where no improvement has been made.

The third replication avers, that appellant had intruded into the public harbor of the city, and collected tolls. The fourth, that the land between high and low water mark in the city of Cairo, had been dedicated by the United States government, and by those under whom Taylor and Parsons claim, to the

public, from time immemorial. The fifth, that appellant passes out beyond the water line of the Ohio river, and controls the mooring and anchoring of vessels that do not touch the land between high and low mater mark, nor receive freight from the strip between those points. Sixth, that Taylor and Parsons have no title to the land between high and low water mark, where this wharf is maintained. A demurrer was filed to these replications, but was overruled, the court below holding that they constituted a sufficient answer to the pleas of appellant. Failing to further plead, the court rendered a final judgment restraining him from intermeddling with the offices, privileges and franchises alleged against him in the information. From that judgment an appeal is prosecuted to this court, and we are asked to reverse the same.

The appellant, in the court below, filed an affidavit, setting forth grounds for a change of venue, but the court overruled the motion and proceeded to try the cause. It is not denied that the affidavit contains all facts requisite to the allowance of a change of venue, but it is insisted that the proceeding is criminal in its nature, and that, under the statute, it is a matter of discretion whether the judge shall grant a change of venue in this class of cases. The first section of the statute of 1861, Sess. Laws 182, declares that when any defendant in any indictment, or information for any offense not punishable by death, in any court in this State, shall apply for a change of venue, the court shall have power to grant or deny the same, after hearing the application. Is this an offence punishable criminally? If so, it falls within this enactment; if not, it is otherwise. We are aware of no decision that has ever held that a proceeding by *quo warranto* is criminal in its nature, much less in form. Anciently, criminal prosecutions were commenced either by an indictment regularly found and presented by a grand jury, or simply on an information drawn up in form, and presented by the king's attorney. But in this country, under modern practice and constitutional

restrictions, criminal proceedings are alone had upon an indictment regularly presented by a grand jury. It is, however, true, that the modern indictment, being prepared and presented by the State's attorney to the grand jury, and they, by twelve of their number, having concurred in the indictment thus presented, and having been endorsed by the foreman, a true bill, is frequently called a presentment, and is popularly known as such. And it is in this sense that the term presentment is used in this statute. It then follows, that as this is not a criminal proceeding, the court below erred in refusing to grant a change of venue.

We now come to the question, whether the pleas filed by appellant presented a defense to the proceeding. That question involves the consideration whether, first, the ownership of the land carries the ownership to low water mark on the river, and if so, secondly, whether the owners have a right to establish and maintain a private wharf between high and low water mark, and make reasonable charges and collect them, for the use of such wharf by vessels navigating the river. These are important questions, the last of which is not altogether free from difficulty. In *Middleton* v. *Pritchard*, 3 Scam. 510, it was held and distinctly announced that, under the common law, all lands bounded by a river not navigable, the line of the riparian owner extends to the centre thread of the stream. It was also held in that case, that the Mississippi river was not, under the rules of the common law, a navigable stream. In this case, however, it is not necessary that the rule should be carried to that extent, as the pleas only claim the fee to low water mark. But this case, which has been the rule of decision 'for more than a quarter of a century, clearly establishes the right of these riparian owners to the low water mark on the river.

It is, however, urged that this case, and those upon which it is based, are not correctly decided, and we are urged to review it, and to settle the rule in the mode desired by

appellees. There can be no doubt that when that case was determined, it announced the rule held by the current of authorities of that day, and a careful examination of adjudged cases and elementary writers of the present day, show they announce the same rule. There are, however, cases to be found which hold a different rule, and others which question the principles upon which it is based. But we are at a loss to discover any pressing necessity for a court which has once, after full argument and mature consideration, solemnly announced a rule of property, which has been acted upon and acquiesced in for almost a generation, and after rights have been acquired under it to an immense amount in value, to review the reasons which controlled in announcing the rule, and by overruling it, unsettling titles, simply because other courts have arrived at a different conclusion, or have announced some other rule not analagous, or which does not, in principle, harmonize with the former decision of this court. There is nothing which tends more largely to the harmony of society and the prosperity of communities, than certainty and stability of rules by which human acts are to be measured.

If this decision were overruled, it would afford appellees the measure of justice they claim, not under the laws as announced, but upon principles they regard more reasonable, but it would at the same time deprive large numbers of rights, in the aggregate amounting to immense sums, which they have acquired under, as they supposed, and had every reason to suppose, a solemn assurance of the law that they should be protected in those rights. The promotion of justice, the stability of titles, or the well being of society, do not require that this decision should be disturbed, whatever might be our views, were the question now before the court for the first time for determination. We therefore decline to review the grounds of that decision, but accept it as the settled law of this State. That case, then, disposes of the first question now under consideration. And it must be held that Taylor and Parsons, if

their pleas are true in fact were the owners, at least to low water mark; that the grant from the government of adjacent lands to those under whom they claim, extended to low water mark, although, as the State of Kentucky originally owned the fee of the river to that point, it may be in this case that it extended no further.

The ownership, then, of this strip of ground between high and low water mark, being in private individuals, have they the right to establish a private wharf and make reasonable charges for its use by those navigating the river? It is manifestly the law, that these great rivers which traverse our continent, are public highways, free to the use of all, under reasonable and proper restrictions. All persons have the right to navigate these streams, and in doing so, to land at all proper places for the usual, necessary and proper purposes, under like restrictions. The absolute rights of persons in the use of the stream for the purposes of navigation, extend alone to the bed of the river, and not to the appropriation of the soil on its banks, either permanently or temporarily, to their own use, unless it be in case of peril, when vessels may no doubt, land either boat or cargo at any point that safety may require, but whether the owner or master in such a case would be liable to make due and reasonable compensation, it is not now necessary to inquire, as that question is not before us for determination.

The rule was announced in the case of *Ball* v. *Herbert*, 3 Term R. 253, that the public, in the enjoyment of the right of using a river as a highway, are not allowed to make use of the banks of the stream, under the common law, for the purpose of towing their vessels on the stream. Lord Hale has said, that "when private interests are involved, they shall not be infringed without satisfaction being made to the parties injured." See Angel on Water Courses, 207, 3d Edition. And in the case of *Ball* v. *Herbert*, Lord Kenyon said, "if satisfaction, then, is necessary, and this satisfaction is not

ascertained, there can be no ground which will support a common law right, and it thus resolves itself into an agreement between the parties, and cannot be considered as a right to use the banks indefinitely." If the public has the absolute right to use the banks as well as the bed of the stream, the banks would be public and not private property, and the riparian owner would have no right to use or enjoy them, and any appropriation of them to his own use, by the erection thereon of buildings or other improvements, or by their cultivation, would be a nuisance. And such a rule would operate unjustly, and lead to great confusion and uncertainty as to the extent of the rights of the public, and those of the riparian owner.

It, then, follows, that while the property of the riparian owner in the bed of the river to the *filum acquæ*, is subservient to the use of the public as a highway, still the banks of the river are not under or subject to that servitude; and to use the banks of the stream, those using them must acquire the right by agreement, prescription or grant. Nor can the increasing commerce divest well established and recognized rights of property held by individuals. There is but one mode of appropriating private property to public use, and that is, by the exercise of the right of eminent domain, under the limitations and restrictions of the constitution. It is true, no doubt, that the public might acquire the right by prescription or by dedication, but, in this case, no such right is claimed. It then follows, that owners of the land on a stream, have the right, between high and low water mark, to establish a private wharf, and charge reasonable compensation for its use; but like the use of other property or services, the charges must not be unreasonable or exorbitantly high.

This, then, is the origin of wharfage, or wharf rights. The riparian owner, having the right to the exclusive use of the banks to the low water mark, the person navigating the river cannot land against the will of the riparian owner, and becomes

a trespasser if he does so without his consent; and as vessels, in prosecuting their business, have occasion to land frequently for the purpose of receiving and discharging freight and passengers, it is but reasonable, that when the riparian owner shall improve and provide a commodious landing at a convenient place, for the purpose of receiving and discharging passengers and freight, he should receive a reasonable compensation. In the case of *Bainbridge* v. *Sherlock,* recently decided by the Supreme Court of Indiana, not yet reported, it was held that the owner of a wharf boat, lying against the bank of the Ohio river, has the right to charge a reasonable compensation for permitting steamboats to land against such wharf-boat, for the purpose of receiving and discharging their cargo and passengers. The right of dockage and wharfage is, perhaps, coeval with commerce, connected with marine and inland navigation; and in all ages and countries charges have been made for such dockage and wharfage to some person, or body of persons, and the law has recognized the right to make reasonable charges for such aids to commerce.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*

BREESE, CH. J., took no part in the decision of this cause.