## HARLOW B. HUBBARD

*v.*

## JAMES BELL.

1. WATER COURSES *not navigable—ownership of riparian proprietors.* By the common law, a water course which is not navigable, belongs, its banks and bed, to the riparian proprietors.

2. WATER COURSES—*as public highways—rights of riparian owners.* Merely because a water course may, in times of periodical freshets, for a few days or weeks, be capable of floating mill logs, but in its natural state, and during a greater portion of the year, is incapable of such floatage, the stream can not be regarded as a highway for that purpose at any time. The bed and the banks of such a stream, it not being navigable, belong to the riparian proprietors, and are wholly and absolutely private, and, there being no claim of prescription or user, not subject to the servitude of the public interest in that regard, nor to be considered as a public highway by water.

WRIT OF ERROR to the Circuit Court of Union county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

The opinion of the Court contains a sufficient statement of the case.

Mr. JAMES FLETCHER, for the plaintiff in error.

The plaintiff in error, being the owner of the bed of the stream, which in its natural state is not navigable for any purpose, but only during periodical freshets, and for a few days or weeks at most, does not hold his title subservient to any public right to pass over the same. *Cooper* v. *Bragg,* 10 Wend. 264; 2 Eden on Injunc. (3d Ed.) 232, and authorities there cited; *Middleton* v. *Pritchard,* 3 Scam. 510; 3 Kent's Com. 427.

The right to pass over the the said lands of the plaintiff by the defendant, with his logs, could not arise by grant or prescription. Such right is not shown in this case, either by the pleadings or by the law. If it be either a right by grant or

prescription, then in case of a grant it must have been created
by deed, grant or contract of some kind; and if by prescrip-
tion, the said stream must have been used by defendant for at
least twenty years, none of which is shown or pretended.
*Town of Lewiston* v. *Proctor,* 27 Ill. 417 ; 3 Kent's Com. 420 ;
*Daniels* v. *The People,* 21 Ill. 442 ; *Green et al.* v. *Oaks,* 17
Ill. 251.

If a right of way is acquired by prescription, it must be
uninterrupted for twenty years, and must be by the consent, or
at least the acquiescence, of the owner of the land. (See the
above authorities.)

The right to float said logs, etc., down said creek, can not
arise from necessity; because the right of way from necessity
presupposes a grant of some kind by the plaintiff to defend-
ant, and the right of way from such grant would be necessary
in order that the defendant should enjoy the thing granted.
3 Kent's Com. 420 to 425, and notes.

Mr. JACKSON FRICK, for the defendant in error.

" If a stream may be used, though only at certain seasons
of the year, for floating down logs, the capacity for such use
will render it subject to the *jus publicum,* at least for that pur-
pose." 3 Kent (11th Ed.) p. 538, note 4 ; *Browne* v. *Chad-
bourne,* 31 Maine, 9 ; *Moore* v. *Sanborne,* 2 Gibbs (Mich.) 519 ;
*Morgan* v. *King,* 18 Barb. (N. Y.) 277 ; *Wadsworth* v. *Smith,*
11 Maine, 278.

The true distinction between streams which are, and streams
which are not, subject to the *jus publicum,* is clearly given in
the language of SHAW, Chief Justice : " It is not every small
creek in which a fishing skiff or gunning canoe can be made to
float at high water, which is deemed navigable. But in order
to have this character it must be navigable to some purpose
useful to trade or agriculture." *Rowe* v. *Granite Bridge Cor-
poration,* 21 Pick. 344.

" The right of public servitude in a stream depends, not
upon its navigability in the common law sense of the term, but

upon its capacity for the purposes of trade, business and commerce." *Morgan et al.* v. *King et al.* 30 Barb. 9.

"The rule to be deduced from the authorities is, that any stream capable of being used in the transportation of any kind of property to market, whether in boats, rafts or single pieces, whether guided by the hand of man or floated at random on the water, is a public stream, and subject to the public easement." *Browne* v. *Scofield,* 8 Barb. (S. C. Rep.) 243; *Morgan et al.* v. *King et al.* 30 ib. 9.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, in the Union circuit court, exhibited by James Bell against Harlow B. Hubbard, for an injunction, to restrain the defendant from creating a nuisance by felling trees into Big creek.

The case, as presented by the pleadings, is a novel one, and the claim of the defendant in error, which was sanctioned by the circuit court, is of a character so extraordinary as to challenge the most careful investigation.

The facts are briefly these : The complainant in the bill, the defendant in error here, is the owner of certain lots or blocks of ground in the town of Ullin, in Pulaski county, which front on the river Cache, and on which are erected saw mills, planing mills, and lumber yard, of which he is the owner. These structures are four miles below the mouth of a small stream called Big creek. On this creek, commencing two miles above its junction with Cache river, and in Union county, the defendant in the bill of complaint, plaintiff in error here, is the owner in fee simple of all the land on both sides of this stream for two miles up and down the creek, including the bed of the creek, on which he has a saw mill propelled by steam, and for his convenience has erected bridges across the creek at two different points, on his own land, and supplies the mill with logs by hauling and by a tramway leading from the mill to the place of deposit of the logs.

The complainant obtains his supply of logs by floating them down Cache river, and some from Big creek, but from no point above the defendant's lands and mill. He, however, alleges that he has made a contract with one Phelps to cut saw logs for him on Big creek, above the lands of the defendant, which are to be floated down to complainant's mill, when the water in the creek is suitable for such purpose, it being alleged in the bill that it is only at certain seasons adapted to the floating and rafting of logs.

The charge is, that defendant felled trees, on his own land, into Big creek, near his mill, and that they were so felled to prevent the complainant from floating and rafting his logs, timber and trees down that stream, and threatens to fell other trees into the creek, and the prayer is, that the defendant be enjoined from so doing.

The defendant, in his answer, admits the principal and important allegations of the bill, and takes the position that as he is the owner of the lands for two miles on each side of the creek, together with the bed of the creek and its banks, he has the right to all the timber growing and standing on each side of the creek and on its banks, and to fell and prostrate it over and across the creek at any point over and along the creek and within the boundaries of his lands. He further admits that, in felling the trees growing on the banks of the creek, the tops and branches, and which he could not prevent, fell into the stream by the force of gravitation. He also admits that he does not wish the complainant to raft or float logs over his land, and he further avers that there is much valuable timber on his land, which overhangs the creek, which he intends to cut and fell, and the tops of which, when felled, will necessarily fall into the creek, where it will be greatly to his advantage they should remain until he is ready to work them into lumber. And, in conclusion, the defendant protests against the right claimed by complainant to the use of defendant's land and water as a highway, or as a channel through and by which to float or raft logs to complainant's mill; that he has at no

time given complainant permission so to use his land and water, and has informed complainant he would prevent it, if he could; and he further says, in his answer, that by using the stream of the creek when suitable for floating, complainant will destroy the bridges erected across the creek, and he avers that Big creek is not a navigable stream, and denies that complainant has any right of way over the same, through and over the lands of the defendant.

On this answer, sworn to, the oath not having been waived, the defendant moved to dissolve the injunction, which motion was overruled, and the cause set for hearing on the bill and answer, no replication having been filed by the complainant, and on such hearing, without any proofs, the injunction was made perpetual.

To reverse this decree, the record is brought here by writ of error.

The pleadings establish the fact that Big creek is not a navigable stream, and by the common law it belongs, its banks and bed, to the riparian proprietors, of whom the plaintiff in error is one to the extent of two miles up and down the stream.

The precise character of this stream is not stated, nor does it appear anywhere in the record. Its length, breadth, or dimensions of its bed above its confluence with the river Cache, are undisclosed, nor have we any means of ascertaining the ordinary volume of water contained in the bed, or its quantity during freshets. We are led to infer, from what is stated, that it is an inconsiderable stream, nearly or wholly dry in the summer season, and carrying a volume of water sufficiently powerful to float logs or rafts only in seasons of freshets, and then for a few days or weeks only. The beds of all such streams we know judicially, have been surveyed by the government of the United States, and sold, and on which the the purchasers or their assigns pay an annual tax to the State, besides local assessments made upon them. They are, to all intents and purposes, private property. Being so, the question is presented by the plaintiff in error, and it arises on the

record—indeed it is the only question of any magnitude in the case, is this private right subservient to the public use?

As preliminary, it may be stated that it does not appear, by this record, that Big creek was ever used, at any season, above the lands of the plaintiff in error, for the purpose of floating rafts or logs. The allegation is, that Phelps was employed to cut logs, and had a portion of them in the creek, ready for floating. The natural capacity of the stream for floating, above the lands of plaintiff in error, does not appear to have been ascertained, and there is no evidence it has ever been used for that purpose.

The defendant in error starts with this proposition: If a stream may be used, though only at certain seasons of the year, for floating logs, the capacity for such use will render it subject to the *jus publicum,* at least for that purpose.

For this, defendant in error has what seems authority, in the cases of *Brown* v. *Chadbourne*, 31 Maine, 9, and *Moore* v. *Sanborne et al.* 2 Mich. 519.

In the case first cited, which was an action on the case for maintaining a dam across Little river, and thereby obstructing the passage of the plaintiff's logs, it appeared that the defendant was the owner of the land on both sides of the river where the dam was built, and had mills there. The plaintiff had a quantity of logs in the river, for the purpose of being driven to his mill below the defendant's dam, but they were prevented by a mass of logs belonging to the defendant, above the dam. On request to remove the obstruction, the defendant refused, insisting that the plaintiff had no right to drive logs on that part of the stream, and forbidding him to drive them. The plaintiff thereupon boomed the defendant's logs, and opened some old sluice-ways belonging to the defendant, and in this way passed his logs below the defendant's dam. To recover for the hindrance and expenses in getting his logs by the dam, the action was brought.

The defendant contended, that at the place where his lands lay, the river was wholly his property; that the public had no

right of passing upon or using it, and that the plaintiff had no right to run logs there.

The plaintiff disclaimed any right arising from prescription or user by himself or others, but placed himself on the broad ground, that from the intrinsic capabilities of the river, any citizen had the right to use it for moving logs.

Much testimony was heard as to the capacity of the river, and it was proved that dams were necessary in some stages of the stream, in order to obtain sufficient water for floating, and it was proved that it had been used many years for floating logs and rafts, and sometimes boats.

The defendant asked the court to instruct the jury, that to constitute Little river a navigable or floatable stream, it must be shown to be capable, in its ordinary and natural state, of floating logs, boats and rafts; and it was not enough to prove that logs might be carried down at certain seasons of the year, when the stream was swollen by a freshet.

This instruction was refused, and in commenting upon it, the supreme court say:

" A test so rigid and severe as that required by this instruction, would annihilate the public character of all our fresh rivers for many miles in their course from their sources toward the ocean. The timber floated upon our waters to market is of great value, and neither the law nor public policy requires the adoption of a rule which would so greatly limit their use for that purpose. The right to the use of the stream in question must prevail whenever it may be exercised, at any state of the water."

The court also said: "The true test to be applied is, whether a stream is inherently and in its nature capable of being used for the purposes of commerce for the floating of vessels, boats, rafts or logs. When a stream possesses such a character, then the easement exists, leaving to the owner of the bed all other modes of use not inconsistent with it."

The case of *Moore* v. *Sanborne et al. supra*, was an action on the case to recover damages for an alleged obstruction of Pine

river, claimed to be a public highway. This river is a small stream emptying into the St. Clair river, and navigable from its mouth to a place called "Deer Licks," a distance of six miles, at all seasons of the year, for boats, rafts and logs, while above the "Deer Licks," and to a point above where the parties used the same, the river was only capable of being used for floatage during the periodical freshets, and that the usual duration of the freshets was from two to three weeks. It appeared, also, that the river had been used for running logs and lumber for fifteen or sixteen years, and from the "Deer Licks" down, more than twenty years.

The court instructed the jury, if they should find Pine river to have been used as a highway for the purpose of floating mill logs, even though at times, at low water, it was not capable of floating them, they should find it a public highway, to the use of which the public had a right; and the court further charged, that Pine river, up to the point where the logs were put into it, and from which point they were run to market, or to the mouth of the river, was a public highway, in which the whole public have an easement; that although the soil over which the river runs may be owned by the adjacent proprietors, the riparian owners, the public have the right to the use of the river in floating to a market logs, rafts, etc., found or produced upon its banks. The court refused to charge, on behalf of the defendant, that if the jury should find that Pine river and its branches, above the point on the river known as the "Deer Licks," are not of sufficient depth to float mill logs in an ordinary stage of the water, the river and its branches above such point is not a public highway or navigable stream; and also refused to charge for defendant, that if the jury should find that Pine river, above the "Deer Licks," is not of sufficient depth to float logs in an ordinary stage of water, and has not been used for floating logs for a period of twenty years or upwards, it is not a public highway, and defendant was not liable in the action.

These several rulings of the court were sustained by the supreme court, and the doctrine of 31 Maine, *supra,* adopted in its fullest extent. The principle is distinctly asserted, that the public have the right to the free use of all streams which are susceptible of any valuable floatage. And to this extent is the claim of the defendant in error. He claims, if Big creek, which, from its mouth to its source, is private property, bought of the United States and paid for, and which may exhibit for the greater portion of the year but a dry bed of gravel and sand, and which has been crossed by fences and bridges, and occupied by other structures reared by the owners, is, notwithstanding, when a freshet occurs of one week's duration, subject to be entered upon by the public, and to be appropriated to floating logs, to the destruction of fences, bridges or other necessary structures, and in defiance of the proprietors of the same. We can not sanction a doctrine fraught in its application with such consequences. However necessary it may be in the great lumbering States of Maine and Michigan, that private rights should yield to the prevailing interest, no such necessity exists in this State, and we shall be careful that the rights of its citizens shall not be wrongfully invaded upon such pretences as are set forth in this record, and sustained by such considerations as influenced the judgments of the courts whose opinions we have considered.

The argument urged in 31 Maine by the successful party, was, that the great common law right of using as a public highway all the streams in that State susceptible of floating a log to market, lay at the bottom of their public prosperity, and that the hundreds of small streams which their lumbermen annually ascend for winter operations, and which, in the freshet season, bear back to market the fruits of their industry, ought to be public highways, and the court, in the opinion, say :

" The timber floated upon our waters to market is of great value, and neither the law nor public policy requires the adoption of a rule which would so greatly limit their use for that purpose. The right to the use of the stream in question must

prevail, whenever it may be exercised, at any state of the water."

The facts appearing in these cases are quite different from those which appear in this case, and in both of those cited, the streams in question had been used for rafting and floating for years, and had a natural capability for such use. This record is barren of any facts of this kind.

But in the case in 31 Maine, reference is made to *Rowe* v. *Granite Bridge Co*. 21 Pick. 344, in which it was held, " that it was not every small creek in which a fishing skiff or gunning canoe can be made to float at high water, which is deemed navigable. In order to have this character, it must be navigable to some purpose useful to trade or agriculture. It is not a mere possibility of being used under some circumstances, as at extraordinary high tides, which will give it the character of a navigable stream, but it must be generally and commonly useful to some purpose of trade or agriculture."

This can not be alleged of Big creek. It can not be said that stream is generally and commonly useful to any purpose of trade or agriculture. In its normal condition, it is a bed of sand and mud or gravel, diversified, perhaps, by pools of water left by the subsiding floods, and separated from each other by sand banks. To say of such a stream, that it is generally and commonly useful for purposes of trade, is saying too much.

It is further admitted in the Maine case, that " small creeks or inlets which can only be used at certain periods of the tide, and then only for a short time, or in which there is only a possibility of use under some circumstances, at extraordinary high tides, are not navigable rivers. Such streams are incapable of any practical general use for the purposes of navigation, and are dissimilar to the river under consideration."

Certainly not more dissimilar than the creek in question, which only, in its abnormal state, in times of freshets or melting of snows, makes a show of navigable water. In its normal state, it is shrunken to the smallest measure, and that state continues, perhaps, ten months out of the twelve.

Other cases are cited by the defendant in error, and among them *Morgan* v. *King*, 18 Barb. 277. The stream in question, in that case, was a river more than one hundred and fifty miles in length, being the outlet of many lakes and ponds in northern New York, and emptying into the St. Lawrence. It was a river the State had taken under its charge, making appropriations for its improvement, and had been used as a public highway for lumber and floats more than thirty years.

In that case, a doubt is expressed, if a stream having a capacity to float single logs at random, and only during freshets, can be regarded as a public stream. But the court held, that the capacity of a stream which generally appears by the nature, amount, importance and necessity of the business that can be done upon it, was the criterion, and they say that a brook, though it might carry down saw-logs for a few days during a freshet, is not, therefore, a public highway. But, they say, a stream upon which and its tributaries, saw-logs to an unlimited amount can be floated every spring, and for the period of from four to eight weeks, and for the distance of one hundred and fifty miles, and upon which, unquestionably, many thousands will be annually transported for many years to come, has the character of a public stream, *for that purpose.* And the court further say, if this particular business may not always continue, though it can, of necessity, last but a short time, and the river can be used for no other purpose, that circumstance would have weight in the consideration of the question.

The case of *Browne* v. *Scofield*, 8 Barb. 239, is also referred to. In that case, the Canisteo river was held to be a public highway from the early settlement of the country, and was always used, from a very early day, as an avenue to market. There was no attempt, on the trial, to dispute the right of the public to use the river as a highway at common law. The case holds only, that those great natural channels and avenues of commerce, whenever found of sufficient capacity to float the products of our fields, forests or mines to market, the common law adjudges as to such, a right of passage to the public.

Reference is also made to *Shaw et al.* v. *Crawford*, 10 Johns. 236. The stream in question, in that case, the Battenkill, had been used for rafting twenty-six years and upwards, and the right to float lumber was based on that fact. Reference is also made to *Wadsworth* v. *Smith*, 11 Maine, 278. There the principle of the common law was adverted to, that above the flow of the tide, rivers become private, either absolutely so, or subject to the public right of way, according as they are small or large streams. Those which are sufficiently large to bear boats or barges, or to be of public use in the transportation of property, are highways by water, over which the public have a common right, and the private property of the owner of the soil is to be improved in subserviency to the enjoyment of this public right. And the court say, if the brook in question was naturally of sufficient size to float boats or mill logs, the public have a right to its free use for that purpose, but such little streams or rivers as are not *floatable*—that is, can not, in their natural state, be used for the carriage of boats, rafts or other property, are wholly and absolutely private, not subject to the servitude of the public interest, nor to be regarded as public highways by water, because they are not susceptible of use as a common passage for the public.

This, so far as we know, is the condition of Big creek.

Another case bearing upon this, not cited, we have examined. It is *Munson* v. *Hungerford*, 6 Barb. 265. This was an action on the case to recover damages for injury to the mill dam of plaintiff across Black river, caused by floating logs by the defendant against the dam.

The defendant claimed the right to navigate the river by floating logs upon it, notwithstanding the exercise of that right might involve the destruction of property of individuals invested in mills and factories depending upon dams for their supply of water.

The question was, whether Black river was navigable, within the meaning of the authorities, so as to subject it to the use of the public.

The court say, quoting from Hale, *de jure mare*, a stream, to be navigable, must furnish " a common passage for the king's people," must be " of common or public use for the carriage of boats and lighters," must be capable of bearing up and floating vessels for the transportation of property, conducted by the agency of man. It is not enough that a stream is capable during a period, in the aggregate, of from two to four weeks in the year, when it is swollen by the spring and autumn freshets, of carrying down its rapid course whatever may have been thrown upon its angry waters, to be borne at random over every impediment in the shape of dams or bridges which the hand of man has erected. To call such a stream navigable in any sense, is a palpable misapplication of the term.

Upon the question of the alleged usage to float logs, that was out of the question, as no usage was shown extending beyond ten years. The defendants were, therefore, compelled to rely upon a dedication by the riparian owners of the stream to the public, for the use and purpose of floating logs two or three weeks of the year, during the swollen freshets, over the rapid current of the river, in such a manner as to endanger and seriously injure the dams of factories and mills scattered all along the course of the river.

The court say that this principle would be confined to a few individuals, the owners of land on the river, and the owners of four or five saw mills upon it, and, therefore, would be in no sense a public right, to be enjoyed by the public at large, and it could only be enjoyed for a few days in the year, and that when the river is swollen to five times its usual size.

There is no question of this kind arising in this case, but the case has a strong bearing against the claim of defendant in error. The time may come when the lands upon Big creek shall be adorned with the most beautiful country seats, with lawns and groves, and structures of taste and costliness, yet the bed of the stream will remain, and some mill owner upon Cache may demand the right to destroy all this beauty, in order to give him a free passage for his saw-logs.

The cases in 31 Maine and 2 Michigan, are based upon grounds we can not sanction, while those cited from New York are placed upon the more practical ground of user. To this principle we do not perceive any objection, but this case is not within it.

It may be, we are under a mistaken impression as to the true facts of this case, the record being so barren, but, taking the record as it is, we can not perceive the least ground on which to base the claim of the defendant in error, and do not think he was entitled to an injunction in the first instance, certainly not to a decree making it perpetual. There was error in so decreeing, and for the error the decree must be reversed and the cause remanded.

*Decree reversed.*