488	BRAXON *et al. v.* BRESSLER.	[Sept. T.,

Opinion of the Court.

# NELSON BRAXON *et al.*

*v.*

# ISAAC N. BRESSLER.

1. NAVIGABLE STREAMS—*rights of riparian proprietor.* The title of a person owning land bounded by a stream of water, extends to the middle or center thread of the stream, and he may maintain replevin for rock or gravel taken therefrom by a trespasser or wrongdoer; and the navigability in fact of the stream above tide water does not affect the title of the riparian owner.

2. Where the stream is navigable in fact above tide water, the public have an easement or right of passage upon it as a highway, but not the right to remove the rock, gravel or soil, except so far as is necessary to the enjoyment of the easement.

3. SAME—*grants bordering on.* Grants of land bounded on rivers, or upon their margins, above tide water, carry the exclusive right and title of the grantee to the center of the stream, unless the terms of the grant clearly denote the intention to stop at the edge of the river.

APPEAL from the Circuit Court of Whiteside county; the Hon. W. W. HEATON, Judge, presiding.

Mr. J. E. McPHERRAN, for the appellants.

Messrs. KILGOUR & MANAHAN, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The north bank of Rock river is one of the boundaries of plaintiffs' land; and at the point where the stone replevied were taken by the defendant the river is 1300 or 1400 feet in width. The stone were quarried from 300 to 500 feet from the north bank of and in the river.

It is conceded that Rock river is a navigable stream; and it is above tide water. The only question presented is the extent of the title of the plaintiffs, if any, beyond the margin of the river.

The common law is in force in this State, and its principles must control in the elucidation of the question.

Though a river may be navigable in fact, it is not so, in a common law sense, where it is above the point where the tide ebbs and flows. Above this point the bed of the stream belongs to the riparian owners. If different persons own the lands on the opposite banks, each one possesses the right to the middle or thread of the stream.

This principle must be applied to Rock river, as the tide does not ebb and flow therein, and there is no language in the deeds of the plaintiffs which excludes the intermediate space between the edge of the stream and its thread from the grant.

The navigability in fact of the stream above tide water does not affect the title of the riparian owner in the right to protection against a trespasser. Where the river is navigable, the public have an easement, or a right of passage, upon it as a highway, but not the right to remove the rock, gravel or soil, except as necessary to the enjoyment of the easement. No individual can appropriate to his own use the bed of the stream, without the consent of the adjoining proprietor.

The principles of the English law, which must govern this court, have been so fully and clearly settled that any elaboration of them is unnecessary.

In *Wright* v. *Howard,* 1 Simons & Stuart, 190, the vice chancellor said: " *Prima facie* the proprietor of each bank of a stream is the proprietor of half the land covered by the stream."

Chancellor Kent declares it as settled that grants of land bounded on rivers, or upon their margins, above tide water, carry the exclusive right and title of the grantee to the center of the stream, unless the terms of the grant clearly denote the intention to stop at the edge of the river. 3 Vol. Com. 426.

In *Jones* v. *Soulard,* 24 Howard (U. S.), 41, the Supreme Court of the United States applied the same principle to the Mississippi river at the city of St. Louis. It was held as a general rule too well settled, as part of the American and

English law of real property, to be open to discussion, that all grants of lands bounded by fresh-water rivers, where the expressions designating the water line are general, confer the proprietorship on the grantee to the middle of the stream.

Such has been the rule in this State for over thirty years.

In *Middleton* v. *Pritchard,* 3 Scam. 570, decided in 1842, it was held that the Mississippi was not a navigable stream, by the common law, and that a grant of land bounded upon it entitled the grantee to all islands lying between the mainland and the center thread of the current.

The same doctrine was declared in *The Board of Trustees* v. *Haven,* 5 Gilman, 548, and in a case between the same parties in 11 Ill. 554.

In the case of *The City of Chicago* v. *Laflin,* 49 Ill. 177, the same principle was announced, and the former cases were cited and approved.

Reference is also made to the following authorities, as sustaining the view taken by this court: *Adams* v. *Pease,* 2 Conn. 481; *Brown* v. *Chadbourne,* 31 Maine, 9; *Commonwealth* v. *Alger,* 7 Cush. 53; *Stover* v. *Freeman,* 6 Mass. 439; *Claremont* v. *Carleton,* 2 N. H. 369; *The People* v. *Canal Appraisers,* 13 Wendell, 355; *Stuart* v. *Clark's Lessee,* 3 Swan, 9; *Lorman* v. *Benson,* 8 Michigan, —; *Walker* v. *Shephardson,* 4 Wisconsin, 486; *Morgan* v. *Reading,* 3 Smedes & Marshall, 366; *Commissioners* v. *Withers,* 29 Miss. 29; *Morgan* v. *Livingston,* 6 Martin (La.), 216; *Gavit* v. *Chambers,* 3 Ohio (3 Hammond), 495.

We have thus referred to numerous adjudged cases, because we are asked to abrogate a rule which has became a law of real property, and to place ourselves in opposition to the long and uninterrupted decisions of this court, and of more than three-fourths of the courts of the other States, on account of a comparatively recent opinion of the Supreme Court of the United States.

In the case of *Railroad Company* v. *Schurmeir,* 7 Wallace, 272, that court, while admitting the common law doctrine to be correct in all jurisdictions where its rules prevail, said, in

regard to a tract of land bordering upon the Mississippi river, that the doctrine did not apply, and that the acts of congress declaring certain rivers navigable, intended to provide that the common law rules of riparian ownership should only apply to streams not made navigable by act of Congress, in certain territory, and where the river had been declared to be navigable, the title to lands bordering upon it should stop at the stream. The reasoning was not, perhaps, necessary to the decision made. The complainant alleged that the corporation was engaged in the extension and construction of its road over and along a public street and landing in front of his premises, so that the landing could not be used for the purposes for which it was dedicated, and the prayer was, that the company be enjoined from the prosecution of the work. The decree of the court below sustaining the injunction was affirmed. The effect of the decision is, that riparian proprietors have the right to construct suitable landings, and use them for the convenience of commerce and navigation, though their title may be limited to the margin of the stream.

The court bases its opinion, as to the extent of the boundary of a riparian proprietor, whose lands border upon a stream, navigable in fact, though above tide-water, upon the following provision of the act of Congress of the 17th of May, 1796: "All navigable streams within the territory to be disposed of shall be deemed to be, and remain, public highways; and in all cases where the opposite banks of any stream, not navigable, shall belong to different persons, the stream and the bed thereof shall be common to both."

The last sentence has no bearing upon this case, for it is admitted that Rock river is a navigable stream. What is the meaning of the language, that navigable rivers shall be deemed to be, and remain, public highways? The intention was, that the river, navigable in fact, should be subject to the public easement; that the public should enjoy its free and uninterrupted navigation, unobstructed by dams, bridges, or other structure which might materially impede its commerce; that it should

be a common highway for every vessel which might float upon its waters. The intention of congress was only to reserve the use of the river. This the public could possess without interference with the riparian owner, and the latter could have his right to the bed of the stream without any interference with the *jus publicum.*

The peace of society and the security of personal rights demand a legal recognition of ownership of the beds of the streams within the States, as well as the water. Wrongs and trespasses must often be committed. Contests and litigation as to the rock, as in this case, and frequently as to the gravel and soil, must arise. The riparian owner should have a remedy against the wrongdoer. He gains by alluvion and loses by avulsion, and, for his full security, should have the right to protect the bed of the stream from individual trespasses.

The opposite view vests the fee in the United States, and makes them the proprietor of every navigable stream in the State. Their interposition in the prosecution of trespasses would be an intermeddling with the policy of the State, and would be perilous to its sovereignty. The common law rule would best subserve the public peace and protect from violence.

If the decision in the case of *Railroad Company* v. *Schurmeir* is to be regarded as authoritative, then it is in direct conflict with the case of *Jones* v. *Soulard, supra.* In the latter case it was distinctly held that, from the days of Sir Matthew Hale to the time when the decision was rendered in 1860, the common law rule prevailed as to fresh-water rivers; that the size of the river did not alter the rule, and to hold that it did would be a dangerous tampering with riparian rights, involving litigation concerning the size of rivers as matter of fact, rather than proceeding on established principles of law. When this decision was made, the act of congress of 1796 had been in force over sixty years.

We prefer to follow this decision, as it is in accord with right and our own decisions. We shall take as our exampler

the same court. In *Gelpcke* v. *City of Dubuque,* 1 Wallace, 175, the Supreme Court of Iowa having overruled a number of its previous decisions, the Supreme Court of the United States refused to follow the later case, and remarked: "It can not be expected that this court will follow every such oscillation, from whatever cause arising, that may possibly occur."

The rule that, where a stream is not subject to the ebb and flow of the tide, its bed shall be deemed the property of the owner of the soil bounding upon its border, has been too long and firmly settled in this State to be disturbed without unsettling titles and unhinging all faith and respect and confidence in the decisions of the courts. Property is purchased on the faith of the stability of decisions of the courts, and it is essential that questions, when once decided, should no longer be considered open, or doubtful, or subject to change. Legislation can only affect the future, but when courts vacillate and overturn their own decisions, the evils may be incalculable. They operate retrospectively, and may often disturb rights which should be regarded as certain and fixed.

We are of opinion that the plaintiffs owned the bed of the stream to its center, and were entitled to recover for the rock taken therefrom.

The judgment is reversed and the cause remanded.

*Judgment reversed.*