# Illinois Official Reports

## Appellate Court

---

### *Holm v. Kodat*, 2021 IL App (3d) 200164

---

| | |
|---|---|
| Appellate Court Caption | ADAM HOLM, DANIEL HOLM, LORETTA HOLM, and NICK HOLM, Plaintiffs-Appellants, v. PETER KODAT, JAMES BENSON, BENSON MARIAN FAMILY TRUST, MARK A. NORTON, WILFRED K. ROBINSON, and GRUNDY COUNTY, Defendants-Appellees. |
| District & No. | Third District<br>No. 3-20-0164 |
| Filed | June 28, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Grundy County, No. 18-CH-90; the Hon. Eugene P. Daugherity, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Zachary Pollack, of Pollack Law Group, of Joliet, and John V. Schrock, of John Schrock Law LLC, of Plainfield, for appellants.<br><br>Chad J. Layton and Patrick F. Sullivan, of Segal McCambridge Singer & Mahoney, Ltd., and John J. Kohnke, of Hawkins Parnell & Young, LLP, both of Chicago, and Mark Rigazio, of Rigazio Law Office, of Morris, for appellees Peter Kodat, James Benson, Benson Marian Family Trust, Mark A. Norton, and Wilfred K. Robinson.<br><br>No brief filed for other appellees. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justices Holdridge and Lytton concurred in the judgment and opinion.


## OPINION

¶ 1        Plaintiffs and the individual defendants own separate parcels of property situated along the Mazon River in Grundy County, Illinois. Collectively, the individual defendants object to plaintiffs' use of kayaks on the portions of the Mazon River that abut their parcels of property. Plaintiffs filed a declaratory action, seeking an order recognizing their right, as riparian owners, to kayak along the entire Mazon River. The trial court initially granted summary judgment for plaintiffs, then, on reconsideration, granted summary judgment for defendants. Plaintiffs appeal.

¶ 2                                      I. BACKGROUND

¶ 3        Plaintiffs own parcels of property situated along the Mazon River in Grundy County, Illinois. Plaintiffs' parcels consist of 33 acres of unimproved, landlocked property (landlocked property) and 9.2 acres of unimproved, road-accessible property (accessible property). Plaintiffs use their parcels of property to operate a fossil hunting business. Plaintiffs routinely commute by kayak from the accessible property to the landlocked property, then from the landlocked property, past the individual defendants' parcels of property, to the Pine Bluff Road Bridge. Once at the Pine Bluff Road Bridge, plaintiffs remove their kayaks from the Mazon River.

¶ 4        Defendant, Peter Kodat, "operates a competing fossil [hunting] business" on his parcel of property. Kodat allegedly organized the other individual defendants—James Benson, Benson Marian Family Trust, Mark A. Norton, and Wilfred K. Robinson—"to sign written trespass notices" for their parcels of property. Kodat, Benson, Benson Marian Family Trust, Norton, and Robinson (defendants) objected to plaintiffs kayaking on the portions of the Mazon River that abut their parcels of property. On one occasion, Kodat complained to the Grundy County Sheriff's Department about plaintiffs' kayaking on the Mazon River past his property, resulting in the arrest of plaintiffs, Adam and Daniel Holm, for trespass.[1]

¶ 5        On December 21, 2018, plaintiffs filed a first amended verified complaint for declaratory relief, requesting an order declaring plaintiffs' "right of access to the whole of the Mazon River, including the right to kayak from the Access[ible] Property to the Landlocked Property and from the Landlocked Property to the Pine Bluff Road Bridge," free of trespass claims by defendants.[2]

---

[1]Adam and Daniel Holm were never formally charged with trespass.

[2]The first amended verified complaint removed John and Douglas Heath as defendants in this lawsuit. Therefore, John and Douglas Heath are not parties to this appeal.

¶ 6                              A. Cross-Motions for Summary Judgment

¶ 7    On June 24, 2019, plaintiffs filed a motion for summary judgment relating to the declaratory relief requested in their verified complaint. On August 28, 2019, defendants filed a cross-motion for summary judgment.

¶ 8    In support of their cross-motion for summary judgment, plaintiffs asserted that they are riparian owners of property abutting the Mazon River. Therefore, as a matter of law, defendants are prohibited from restricting plaintiffs' reasonable use and enjoyment of the entire Mazon River. In response, defendants agreed plaintiffs have the right "to access waters adjoining and within and upon [plaintiffs'] property." Defendants disputed that plaintiffs' riparian rights allowed the unrestricted privilege of "navigating [the] waterways of adjoining landowners."

¶ 9    In addition, defendants' cross-motion for summary judgment alleged it was undisputed that, together, certain defendants own property on both sides of the portions of the Mazon River, a nonnavigable waterway, that plaintiffs use for kayaking. Based on their undisputed status as riparian owners on the Mazon River, defendants argued that they could exclusively control the water and the property underneath the water that abutted their parcels of private property.[3] By extension, since each defendant refused to grant plaintiffs permission to use those portions of the Mazon River, defendants argued they were entitled to summary judgment.

¶ 10                             B. Decisions of the Trial Court

¶ 11   On October 9, 2019, the trial court held a hearing on the parties' cross-motions for summary judgment. At the conclusion of the hearing, the trial court found summary judgment for plaintiffs was proper under *Beacham v. Lake Zurich Property Owners Ass'n*, 123 Ill. 2d 227 (1988). Consequently, the trial court declared plaintiffs' right to the "use of the surface water only." The trial court found this right did not allow plaintiffs to leave their kayaks while en route for purposes of "digging and scrambling around for fossils or whatever it be."

¶ 12   On January 6, 2020, defendants timely filed an amended motion to reconsider and vacate the trial court's entry of summary judgment for plaintiffs. Relying on the uncontested fact that the Mazon River is a nonnavigable waterway, defendants argued the trial court's ruling, in reliance on *Beacham*, was contrary to longstanding common law precedent establishing defendants' exclusive right to refuse access to the portions of the Mazon River that abut their parcels of property. The trial court held a hearing on the amended motion to reconsider and vacate on March 5, 2020. After receiving arguments, the trial court found as follows:

> "This court originally had before it the *** *Beacham* case ***.
>
> And I applied the reasoning in *Beacham* even though it was *** putting a square peg into a round hole *** because of the similarities that were involved.
>
> * * *
>
> And, therefore, I felt that [*Beacham*] being the Supreme Court of Illinois' most recent expression on the rights of a landowner of the bed of the non-navigable body of water, that *Beacham* should control here ***.
>
> Now it has been presented to me that there's an entire body of case law that has not been overruled and that establishes that the private ownership of a non-navigable body

---

[3]Plaintiffs have admitted "[t]he Mazon [River] is a non-navigable waterway."

- 3 -

of water, like the parties have here, permits the parties who own that property to have the exclusive rights to the water in front of the property which they own.

That means that here [plaintiffs] have the exclusive rights to use and keep people from using the surface from their property that abuts their ownership of land, and the defendants *** would also enjoy those same rights and privileges.

* * *

I'm going to vacate the summary judgment that I granted for the plaintiffs and vacate the order that denied the defendants' cross motion for summary judgment.

And based on the law that's been provided to me, I'm going to grant the defendants' motion and deny the plaintiffs' motion upon reconsideration on the grounds that the fact that the Mazon River is factually non-navigable and the fact that there is private ownership of the bed of the river, *** [which] carries with it the exclusivity of ownership in the water above the property owned by the abutting owners.

And that is supported by the case law that was cited in the brief requesting this court to reconsider its previous decision.

And I think that the riparian rights of access are not superior to the rights of private ownership.

And I don't believe that the *Beacham* case is controlling of the issue before the court as I did originally because of the variables that are in the *Beacham* case [and] because of *** the other cases which indicate that the creation of the property line in a lake is impossible to develop, whereas in a stream such [as] the Mazon River it is not impossible and, therefore, it can be done."

¶ 13　　　On March 10, 2020, the trial court signed an order granting defendants' motion to reconsider, vacating its October 9, 2019, order, and granting defendants' cross-motion for summary judgment while denying plaintiffs' cross-motion for summary judgment. The trial court found defendants had "exclusive rights to all property owned by them, including the land, water, surface of the water, and any and all substance *** both upon the land and beneath the surface of the Mazon River." The trial court declared plaintiffs were "excluded from using or accessing, in any way, the surface of the Mazon River on the portion *** that runs adjacent to any property that is owned by" defendants. Plaintiffs were also "precluded from removing fossils or any other property that is located on the portion of the Mazon River that runs adjacent to any property that is owned by" defendants. Plaintiffs filed a timely notice of appeal on March 31, 2020.

¶ 14　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 15　　　On appeal, we must decide whether the trial court correctly granted summary judgment for defendants. In doing so, our court must determine whether downstream riparian owners of property on a nonnavigable river, in this case defendants, may lawfully bar other upstream riparian owners of property on that same river, in this case plaintiffs, from traversing the various segments of the river that comprise defendants' private property. Based on well-established case law governing riparian rights and the navigability of Illinois rivers and streams, we conclude this question must be answered in the affirmative. As a result, the trial court's grant of summary judgment for defendants was correct and must be affirmed.

¶ 16	Under section 2-1005(c) of the Code of Civil Procedure (Code), summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). When cross-motions for summary judgment are filed, as they were here, the parties "mutually concede that there are no genuine issues of material fact and that only a question of law is involved." *Gurba v. Community High School District No. 155*, 2015 IL 118332, ¶ 10 (citing *Pielet v. Pielet*, 2012 IL 112064, ¶ 28). Our court reviews decisions on motions for summary judgment *de novo*. *Id.*

¶ 17	Initially, the parties suggest that the issue subject to our review is one of first impression. This might, to some extent, be true. However, the narrow issue of first impression can be decided by applying the rationale that has been employed for over a century with respect to riparian rights and the navigability of Illinois rivers and streams.

¶ 18	Generally, riparian rights are "the rights of an owner of land that borders on a body of water or watercourse to the use of the water." *Alderson v. Fatlan*, 231 Ill. 2d 311, 318 (2008). These rights originate by operation of law, "solely because the land abuts the body of water." *Id.* The riparian rights of property owners, abutting the same body of water, are equal, such that no " 'property owner may exercise its riparian rights in such a manner so as to prevent the exercise of the same rights by other similarly situated property owners.' [Citation.]" *Id.* at 318-19.

¶ 19	For rivers and streams, a riparian owner "has the right to the flow of [the river's] water as a natural incident of his estate." *Leitch v. Sanitary District of Chicago*, 369 Ill. 469, 473 (1938). This right "cannot lawfully be diverted, increased, diminished or polluted" without consent or due process. *Id.*; see also *Druley v. Adam*, 102 Ill. 177, 193 (1882) ("[R]iparian proprietors have precisely the same rights in regard to [water while it passes their property], and, apart from the right of consumption for supplying natural wants, neither can, to the injury of the other, abstract the water, or divert or arrest its flow."). If a riparian owner's land extends to and bounds on a river, then the center of the river is the property line. *Schulte v. Warren*, 218 Ill. 108, 117 (1905); accord *Fuller v. Shedd*, 161 Ill. 462, 474-75 (1896); *Braxon v. Bressler*, 64 Ill. 488, 489 (1872). If a riparian owner owns land on both sides of a river, then he owns "the whole of the bed of the stream to the extent of the length of his lands upon it." *People ex rel. Deneen v. Economy Light & Power Co.*, 241 Ill. 290, 318 (1909); accord *Albany R.R. Bridge Co. v. People ex rel. Matthews*, 197 Ill. 199, 205-06 (1902) (*per curiam*).

¶ 20	A riparian owner has "rights to the beds of all streams above the flow of the tide whether actually navigable or not." *Leitch*, 369 Ill. at 474. For rivers or streams, navigable in fact, the right "is subject to a public easement to use the river for navigation." *Id.* at 475; accord *Trustees of Schools v. Schroll*, 120 Ill. 509, 518-19 (1887) ("[G]rants of land bounded on streams or rivers above tide water, carry the exclusive right and title of the grantee to the centre of the stream *** subject to the easement of navigation in streams navigable in fact ***."); *Smith v. City of Greenville*, 115 Ill. App. 3d 39, 42 (1983). That is, "the public have an easement for purpose[s] of navigation in waters which are navigable in fact, regardless of the ownership of the soil." *DuPont v. Miller*, 310 Ill. 140, 145 (1923); accord *Schulte*, 218 Ill. at 119; see also *Braxon*, 64 Ill. at 489 ("Where the river is navigable, the public have an easement, or a right of passage, upon it as a highway, but not the right to remove the rock, gravel or soil, except as necessary to the enjoyment of the easement."); *Ensminger v. People ex rel. Trover*, 47 Ill. 384,

390 (1868) (supreme court stating, when a river or stream is navigable, as to provide the public with an easement, that easement "extend[s] alone to the bed of the river").

¶ 21        Importantly, a river or stream is navigable in fact if it naturally, by customary modes of transportation, is "of sufficient depth to afford a channel for use for commerce." *DuPont*, 310 Ill. at 145 (citing *Schulte*, 218 Ill. at 119); *Economy Light*, 241 Ill. at 332-33; see also *Hubbard v. Bell*, 54 Ill. 110, 122 (1870) (supreme court stating "a stream, to be navigable, must furnish 'a common passage for the king's people,' must be 'of common or public use for the carriage of boats and lighters,' [and] must be capable of bearing up and floating vessels for the transportation of property, conducted by the agency of man"); *Central Illinois Public Service Co. v. Vollentine*, 319 Ill. 66, 67-68 (1925) (supreme court finding, "Sangamon river is a stream over which commerce cannot be carried on in the customary modes in which such commerce is conducted by water, and is therefore not a navigable stream"). Of vital importance here, "[t]he fact that there is water enough in places for rowboats or small launches *** does not render the waters navigable." *Schulte*, 218 Ill. at 119; accord *Economy Light*, 241 Ill. at 332. When the river is navigable in fact, "[i]t has long been established 'that the property of a riparian owner in the bed of the river *** is subservient to the use of the public as a highway.' " *Perona v. Illini Harbor Services, Inc.*, 130 Ill. App. 3d 984, 986 (1985) (quoting *Ensminger*, 47 Ill. at 391).

¶ 22        However, if the river or stream cannot satisfy this definition of navigability, such that it is not navigable in fact, then the river or stream is not subject to an easement in the public for navigation and the riparian owner instead owns "the bed of the stream *** absolutely[ ] free from any burdens in favor of the public." See *Economy Light*, 241 Ill. at 318 (citing *Washington Ice Co. v. Shortall*, 101 Ill. 46 (1881)); accord *Middleton v. Pritchard*, 4 Ill. 510, 520 (1842) ("If it were a stream not navigable [in fact], the rights of the riparian owner extended to the centre thread of the current," meaning "the water, and the soil under it *** [were] exclusively in the riparian owner."). In this situation, the case law provides various examples of the exclusivity of the riparian owner's right. See *Schulte*, 218 Ill. at 119 (supreme court stating, at common law, "the riparian proprietor had the exclusive right to fish in the waters covering the soil owned by him, to the center of the stream"); *Druley*, 102 Ill. at 193 (supreme court stating, "[t]he owner of land over which a stream of water flows, has *** a property right in the flow of the water at that place for all the beneficial uses that may result from it ***[;] in other words, he has a *usufruct* in the water while it passes"); *Braxon*, 64 Ill. at 489 ("No individual can appropriate to his own use the bed of the stream, without the consent of the adjoining proprietor."); *Shortall*, 101 Ill. at 52 (supreme court stating, unless clearly denoted, "grants of land bounded on rivers or upon their margins, above tide water, carry the exclusive right and title of the grantee to the centre of the stream, subject to the easement of navigation," including "the water, the bed, and all islands"); accord *Albany*, 197 Ill. at 205; *Piper v. Connelly*, 108 Ill. 646, 651 (1884).

¶ 23        The trial court relied on the rationale set forth in *Beacham* when initially granting summary judgment for plaintiffs. Now, plaintiffs argue the trial court's original decision, applying *Beacham*, was correct. Consequently, a brief review of *Beacham* is in order.

¶ 24        *Beacham* involved a private, nonnavigable lake, rather than a nonnavigable river. See *Beacham*, 123 Ill. 2d at 228. The plaintiff, who owned 15% to 20% of the lakebed and operated a public boat rental business, sought "a declaration that *** [she] and her licensees were

- 6 -

entitled to the reasonable use of the entire lake, including the waters overlying those parts of the lake bed owned by members of the defendant" homeowners' association. *Id.* at 227-28.

¶ 25    In its analysis, our supreme court acknowledged a common law rule and a civil law rule, which represented "two conflicting views on the subject." *Id.* at 229; see also *Alderson*, 231 Ill. 2d at 319 (supreme court discussing *Beacham*'s identification of the common law and civil law rules). Our supreme court observed, on the one hand, the common law rule states "the owner of a part of a lake bed has the right to the exclusive use and control of the waters above that property." *Beacham*, 123 Ill. 2d at 230. This is a corollary of the view that "ownership of a parcel of land entitles the owner to the exclusive use and enjoyment of anything above or below the property." *Id.* at 230-31. Our supreme court recognized, in other states, the common law rule allows "the owner of a part of a lake bed [to] exclude from the surface of the overlying water all other persons, including those who own other parts of the lake bed." *Id.* at 231.

¶ 26    On the other hand, our supreme court observed that, under the civil law rule, which was ultimately adopted in *Beacham*, the ownership of part of the bed of a private, nonnavigable lake entitled the owner and the owner's licensees to the reasonable use and enjoyment of the entire lake surface, provided there was no undue interference with the reasonable use of the water by other owners and their licensees. *Id.* at 228-31. Our supreme court reasoned that the courts of other states, in the context of lakes, have "noted the difficulties presented by attempts to establish and obey definite property lines [citations] and certain other impractical consequences of [the common law rule], such as the erection of booms, fences, or barriers." *Id.* at 231-32. Further, an application of the civil law rule promoted the recreational use and enjoyment of lakes. *Id.* at 232. Thus, "the arguments supporting the civil law rule warrant[ed] its adoption in Illinois" because "[r]estricting the use of a lake to the water overlying the owner's lake bed property [could] only frustrate the cooperative and mutually beneficial use of that important resource."[4] *Id.*

¶ 27    Initially, the physical characteristics of the Mazon River, unlike those of the private, nonnavigable lake at issue in *Beacham*, do not involve the difficulties or impracticalities related to establishing and obeying "definite property lines." See *id.* at 231-32; *Smith*, 115 Ill. App. 3d at 42; *Fuller*, 161 Ill. at 483. To the contrary, here, the property lines can be established, verified, and enforced by public records and centuries-old case law governing riparian rights and navigability. Moreover, the public policy of promoting the recreational use and enjoyment of an entire lake, by each partial owner of a lakebed and his or her licensees, does not necessarily equally apply to a narrow, nonnavigable river, like the Mazon River. See *Beacham*, 123 Ill. 2d at 232. Therefore, we decline to extend the rationale in *Beacham* to resolve the dispute over the rights of the riparian owners along the Mazon River in this appeal.

¶ 28    Here, it is undisputed that both plaintiffs and all defendants have riparian rights attributable to their ownership of property along the Mazon River. It is also undisputed that the Mazon River is not navigable in fact. That is, the parties agree that the Mazon River is not, in its natural state, an avenue for commerce by the customary modes of water transportation. See *DuPont*, 310 Ill. at 145 (citing *Schulte*, 218 Ill. at 119); *Economy Light*, 241 Ill. at 332-33; *Hubbard*, 54 Ill. at 122. Further, it is irrelevant, for purposes of determining navigability in fact, that the

_____

[4]"The question remain[ed]" whether the plaintiff and her licensees' use of the lake was reasonable and not an undue interference with the reasonable use of other owners and their licensees. *Beacham*, 123 Ill. 2d at 232. Our supreme court expressed no view on the answer to this question. *Id.*

Mazon River can support kayaks. See *Schulte*, 218 Ill. at 119; accord *Economy Light*, 241 Ill. at 332.

¶ 29 Since the Mazon River is not navigable in fact, a public easement does not exist to allow public navigation on the Mazon River. See *Leitch*, 369 Ill. at 475; *Schroll*, 120 Ill. at 518-19; *Smith*, 115 Ill. App. 3d at 42; *DuPont*, 310 Ill. at 145; *Schulte*, 218 Ill. at 119; *Braxon*, 64 Ill. at 489; *Ensminger*, 47 Ill. at 390. Instead, defendants own to the center of the bed of the stream abutting their respective properties, including the water, "absolutely[ ] free from any burdens in favor of the public." See *Economy Light*, 241 Ill. at 318 (citing *Shortall*, 101 Ill. 46); *Middleton*, 4 Ill. at 520; *Albany*, 197 Ill. at 205-06. Consequently, each defendant may lawfully bar any and all trespassers from the segment of the Mazon River that abuts his respective parcel of property. For this reason, it behooves property owners along nonnavigable bodies of water to maintain good relationships with their neighbors. Those relationships could determine whether, by permission or contract, a right of access is granted.

¶ 30 Although it is undisputed, it should be noted that plaintiffs own a landlocked parcel of private property situated on the Mazon River. It should also be noted that plaintiffs have not asserted the existence of an easement by necessity. Thus, we conclude the landlocked nature of this parcel of property will not play a role in the outcome of this particular appeal.

¶ 31 Based on the above-cited case law, we conclude that both plaintiffs and defendants have private property rights, attributable to their status as riparian owners, that are superior to the interests of the general public. Likewise, plaintiffs and defendants enjoy, based on their status as riparian owners, private property rights on their parcels that are superior to the rights of all other riparian owners. Therefore, the riparian owner of each individual parcel of private property, situated along the Mazon River, may lawfully bar access, within their easily ascertainable property lines, to any person, including their riparian neighbor.

¶ 32 Applying these principles on appeal, plaintiffs may not kayak on the portions of the Mazon River that abut the property of their riparian neighbors, including defendants, without first obtaining the neighbors' consent. However, this decision should not be construed as providing riparian owners with unlimited authority on their private property. Riparian owners may not lawfully take any action, within the boundaries of their private property, that diverts, increases, diminishes, or pollutes the flow of the water on the Mazon River, as to interfere with the use of the Mazon River by other riparian owners on their own property. See *Alderson*, 231 Ill. 2d at 318-19; *Leitch*, 369 Ill. at 473; *Druley*, 102 Ill. at 193.

¶ 33 For these reasons, we conclude that the trial court correctly entered summary judgment in favor of defendants.

¶ 34                                              III. CONCLUSION

¶ 35 The judgment of the circuit court of Grundy County is affirmed.

¶ 36 Affirmed.