THE CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Appellant, *vs.* WILLIAM E. VOLLENTINE *et al.* Appellees.

*Opinion filed October 28, 1925—Rehearing denied December 4, 1925.*

1. WATERS—*Sangamon river is not part of public waters of the State—Commerce Commission.* The Sangamon river is a stream over which commerce cannot be carried on in the customary modes in which such commerce is conducted by water and is therefore not a navigable stream and is not among the public waters of the State, nor can it be made navigable by legislation, and the question of damages from the use of the stream by a public utility is within the jurisdiction of the Commerce Commission and not the Department of Public Works and Buildings.

2. RES JUDICATA—*when injunction proceeding is not res judicata of right of eminent domain.* The rule that where a fact necessarily involved in a suit has been decided the judgment is conclusive in a subsequent suit where the same matter is in issue between the same parties does not apply to render a former proceeding enjoining the maintenance of a dam by a public utility on account of the damage done riparian owners *res judicata* of a subsequent condemnation proceeding to ascertain and pay just compensation for the damage done in maintaining the dam.

3. CONSTITUTIONAL LAW—*what provisions may be included in an act.* An act having a single, general subject indicated in the title may contain any number of provisions, no matter how diverse they may be, so long as they are not inconsistent with or foreign to the general subject, and may be considered in furtherance of such subject in providing for the method and means of carrying out the general object.

4. PUBLIC UTILITIES—*Public Utilities act is not invalid as embracing more than one subject.* The Public Utilities act, in so far as it authorizes the exercise of the power of eminent domain, is not unconstitutional as embracing more than one subject.

5. EMINENT DOMAIN—*when petition for taking easement is sufficient.* Where the maintenance of a dam by a public utility interferes with and damages riparian rights, a petition for the exercise of the power of eminent domain by the taking of said rights and the ascertainment of damages and payment of compensation is not a petition for taking the property itself, and it is sufficient where it contains a legal description of the land on which the dam

is located, of the lands of the respective riparian owners and of the elevation of the dam, and where, on a hearing of the motion to dismiss the petition, a plan of the dam, profile of the river and topographical survey of the lands are filed.

APPEAL from the County Court of Christian county; the Hon. C. J. VOGELSANG, Judge, presiding.

STEVENS & HERNDON, VAUSE & KIGER, and HOGAN & REESE, for appellant.

LESLIE J. TAYLOR, (W. S. GREER, of counsel,) for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal from a judgment of the county court of Christian county dismissing a proceeding brought by appellant under the law of eminent domain to acquire the right to damage the property of appellees by causing the same to be overflowed at various times during the year by reason of the construction and maintenance of a dam across the south fork of the Sangamon river, which flows adjacent to the property sought to be damaged.

Appellant is an Illinois corporation engaged in generating and selling electricity to various municipalities, corporations and private individuals in central Illinois, and in so doing is a public utility within the meaning of the Public Utilities act and subject to the authority of the Illinois Commerce Commission, and as such public utility the right of eminent domain is conferred upon it when necessary for the construction of any alterations, additions, extensions or improvements ordered or authorized by the Commerce Commission under the provisions of the act. (Smith's Stat. 1923, chap. 111⅔, sec. 59.)

The Sangamon river is a stream over which commerce cannot be carried on in the customary modes in which such commerce is conducted by water, and is therefore not a

navigable stream and is not among the public waters of the State, nor can it be made navigable by mere legislation. (*Hubbard* v. *Bell,* 54 Ill. 110; *People* v. *Economy Power Co.* 241 id. 290.) The river is therefore not under the exclusive jurisdiction of the department of Public Works and Buildings, but for the purposes in question in this suit is under the jurisdiction of the Commerce Commission.

In 1913 the appellant acquired the title to a forty-acre tract of land on the same river further down the stream than the lands of appellees, and constructed thereon a generating station for the generation and distribution of electrical current by means of transmission wires, such station to furnish light and power to individuals and municipal corporations. To provide for a continuous supply of water for the operation of its plant appellant constructed a dam in the river about four and a half feet high, and later added thirty inches more to its height by a superstructure, making the top of the dam about two and a half feet below the top of the banks of the stream. Certain riparian owners, among whom were some of appellees, claimed that the obstruction to the flow of the water by the dam caused the stream to overflow oftener, the overflow to reach parts of their lands which had not previously been subject to overflow, and caused the water to stand longer on their lands than it had previously done, thereby seriously damaging their lands for cultivation, and brought suit for a mandatory injunction to require appellant to remove the dam and obstructions to the natural flow of the water. A decree was entered in the circuit court granting the relief claimed, which decree was affirmed by the Appellate Court, and thereafter by this court in *Deterding* v. *Central Illinois Service Co.* 313 Ill. 562. In this court in that case appellant contended that the controversy should have been submitted to and determined by the Commerce Commission, with which contention this court did not agree. On January 15, 1925, after the opinion of this court had been filed in that case, upon the petition of ap-

pellant the Commerce Commission entered an order direct-
ing and authorizing the installation, construction and main-
tenance of a dam in the channel of said stream of a height
not to exceed the height of the two dams which were then
in the river, and that a dam of the height of the dams
then existing was necessary to the convenience of the pub-
lic served from the power station, and that such dam should
be installed, constructed and maintained to supply the ex-
isting demands for electrical energy throughout the terri-
tory served by appellant.   After obtaining this order, and
in pursuance thereof, appellant brought this suit, which was,
upon motion of appellees, dismissed by the court.

It is contended by appellees that in the former suit it
was held, in effect, that the Commerce Commission had no
jurisdiction to enter the above order.   This is a misconcep-
tion of our former holding.   That question was not in-
volved in the former suit, and the holding there was, that
under the circumstances of the case the questions involved
in that suit were proper questions for the court and not for
the Commerce Commission.

It is contended by appellees that the judgment in the
former suit ordering the removal of the dam is *res judicata*
in this suit as to the right of appellant to maintain the dam.
The general truth of the proposition that where a fact nec-
essarily involved in the litigation has been decided in a suit
and again becomes a matter in issue by the same parties in
a subsequent suit the former judgment is conclusive as to
such matter, is well established.   (*Buerger* v. *Buerger*, 317
Ill. 401.)   The questions involved in this suit and in the
former suit, however, are not the same.   In the former case
it was held that the natural flow of water in the river had
been unlawfully obstructed by the owners of the servient
heritage to the injury and damage of the owners of the dom-
inant heritage, and that this was an invasion of the legal
rights of the owners of the dominant heritage, depriving
them of their property without any compensation.   While

in the present case the owner of the servient heritage seeks to obstruct the natural flow of the water and thereby cause injury and damage to the owners of the dominant heritage, it does not seek to deprive them of their property without compensation but is attempting to do that which under the law it has a right to do,—*i. e.,* ascertain what such just compensation is and to pay the same. While the dam, the *locus in quo* and some of the parties are the same in both suits, the end sought to be attained and the questions involved in the two suits are entirely dissimilar. Damaging private property for public use by a public utility company after the ascertainment and payment of just compensation is not an unlawful invasion of the legal rights of the individual but is a right recognized by section 13 of article 2 of the constitution of 1870. The judgment of the former suit does not constitute a bar to the maintenance of the present one under the changed conditions.

It is contended by appellees that if the Public Utilities act be so construed as to give to appellant the right of eminent domain the act must be held to be unconstitutional, as authorizing the taking of private property for private use and as embracing more than one subject. An act having a single, general subject indicated in the title may contain any number of provisions, no matter how diverse they may be, so long as they are not inconsistent with or foreign to the general subject, and may be considered in furtherance of such subject by providing for the method and means of carrying out the general object. (*People* v. *McBride,* 234 Ill. 146.) In *Public Service Co.* v. *Recktenwald,* 290 Ill. 314, in holding the Public Utilities act not unconstitutional upon the same grounds as here claimed, this court said: "It cannot be doubted that power may be conferred upon a corporation organized under authority of the General Assembly to serve the public by supplying the people with gas, electricity, heat and water, which can best be produced and distributed by such a corporation acting under

State control, to take private property for the public uses of such corporation by the power of eminent domain."

It is contended by appellees that the petition filed in the county court did not sufficiently describe the land sought to be taken. By this proceeding no lands were sought to be taken. The petition alleged that appellees' tracts of land had certain easements appurtenant thereto relative to the flow of water in and over the land of appellant, which said easements would be interfered with by the installation of the dam, and that it was necessary that petitioner acquire such easements as would be interfered with by the maintenance and construction of the dam. The petition contained a legal description of the land on which the dam is located and of the lands of the respective land owners and of the elevation of the dam. Upon hearing of the motion appellant filed a plan of the concrete dam, a profile of the river showing elevations of the banks and bed and a topographical survey of the lands of appellees. We are of the opinion that the provisions of the statute were sufficiently complied with in this respect by appellant.

Many other contentions are made by appellees, but as they are all answered by the views herein expressed and by the authorities cited in this opinion they will not be discussed in detail.

Upon the record in this case appellant clearly had a right to maintain its condemnation suit, and the court erred in dismissing it.

The judgment of the county court is reversed and the cause remanded to the county court of Christian county, with directions to overrule appellees' motion to dismiss the petition. *Reversed and remanded, with directions.*