(No. 17810.—

THE CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Appellant, *vs.* G. A. DETERDING *et al.* Appellees.

*Opinion filed June 23, 1928—Rehearing denied October 5, 1928.*

278

STEVENS & HERNDON, HOGAN & REESE, and VAUSE & KIGER, for appellant.

LESLIE J. TAYLOR, (W. S. GREER, of counsel,) for appellees.

Mr. COMMISSIONER CROW reported this opinion:

A proceeding was instituted in the county court of Christian county by appellant to have damages assessed occasioned by the assertion by it as a public utility, under

the Eminent Domain act, of its right to overflow certain lands of the appellees. The cause was heard by a jury on the assessment of damages, a verdict assessing damages was returned by a jury, motion for new trial denied, and judgment rendered. Petitioner brings the record to this court to reverse the judgment.

The facts out of which the present controversy arises were before the court in *Deterding* v. *Central Illinois Public Service Co.* 313 Ill. 562, in which one of the present appellees sought to compel the removal of the dam in question. The circuit court awarded a mandatory injunction for its removal and the decree was affirmed. Afterward appellant began this proceeding. The county court entered an order dismissing the petition, and its order was reversed and the cause remanded, with directions to overrule the motion to dismiss it. (*Central Illinois Public Service Co.* v. *Vollentine,* 319 Ill. 66.) In those cases the facts out of which this action arises appear. To the Deterding land the jury awarded $7750 and to the Vollentine land $2200.

The claim of petitioner to an easement and property rights to be appropriated by it is: Petitioner is a corporation authorized to engage in and is engaged in the manufacture and distribution of electricity for lighting, heating, power, etc., in various counties of Illinois and is a public utility corporation within the meaning of the law; that on January 15, 1925, the Illinois Commerce Commission, after a hearing and upon its own motion, entered an order for the installation and construction of a dam across the South Fork of the Sangamon river, and ordered that petitioner proceed to construct and maintain it at the height therein stated, equivalent to and identical with the height of 546.70 feet above sea level, across the channel of the stream at its power station site; that the South Fork of the Sangamon river is not navigable, has a well-defined channel at the point in question, with banks at all points of a height equal to or higher than the level of 546.70, and that

it is the outlet of the natural flow of waters from lands through which it flows; that the stream is the natural outlet for surface and sub-surface drainage for certain tracts of land situated above petitioner's power station and within the watershed of the stream; that appurtenant to each of the tracts invested in the respective owners thereof and parties interested therein are private easements, interests, property or rights to have the flow of said stream through, in, over and upon the above described land of petitioner maintained in its natural state, which easements, interests, property or rights will be taken, damaged or interfered with by the installation, construction and maintenance of the dam; that it is therefore necessary that petitioner acquire so much of said easements, interests, property and rights as will be so taken, damaged or interfered with, in order that petitioner may have the right to install, construct and maintain its dam.

As usual in cases of this character, there was a great disparity in the opinions of witnesses for appellant and for appellees on the question of damages. The differences in opinion relate to the effect of the dam in holding water upon the lands of appellees. There was no difference in the testimony as to the fact that at times the flow from the lands is retarded. The difference was as to its extent, duration and effect. Appellant, the owner of the servient heritage, seeks in a lawful manner, for a lawful purpose, to obstruct the natural flow of water, whereby some injury may arise and damage accrue to the owners of the dominant heritage. Appellant is by this proceeding seeking to ascertain in a constitutional manner the just compensation to be paid to those whose property will be damaged by the assertion of its rights acquired in the exercise of its duty to serve the public.

Preliminary to a discussion of errors assigned it is necessary to call the attention of counsel to rule 14 of this court. Exhibits are mentioned in the argument and the

court is referred to record pages for an examination of them. Apparently the exhibits would be of assistance in understanding some of the questions discussed, but the rule is in the interest of conservation of labor and will be enforced, with an exception not now applicable. The apparent value of Exhibits 2, 3 and 4 (contour maps, it is said,) is of this character. They were put in evidence in connection with the testimony of hydraulic engineers. Their testimony went to the effect of an increase in elevation of the water level as affected by the dam, and the duration of additional water, occasioned by rain, remaining on appellees' land, based on sea level datum. Witnesses who qualified as expert hydraulic engineers testified that from the data at their command they could and did compute the greatest area of the land of appellees which would be overflowed with the dam in place in excess of what the overflow would be without the dam in any flood. All of the factors leading to their conclusion were given to the jury. The conclusion was the result of mathematical computation from uncontradicted evidence as to the data upon which the computations were based. The area affecting the Derding land is one and two-tenths acres and the flood is sixty-eight minutes per day longer. The affected area of the Vollentine land is three acres and the flood duration forty-three minutes per day longer; that the Vollentine land could not be drained by tile if no dam were in place. After this evidence was in, Goodell, an engineer testifying for appellees, was asked: "Now, can the exact result be determined by considering only the four elements of the elevation of the proposed dam, the elevations shown by the topographic maps, government gauge readings at the bridge from 1917 to the spring of 1925 as shown by petitioner's exhibit, and taking the readings and measurements of water elevations on nine days, covering six days in succession, and, I think, about three days about six weeks later, considering these elements alone?" An objection to the

question was sustained. The witness was then asked, "Well, can the effect of this dam upon the Deterding land be determined by considering these four elements alone?" The answer was, "They cannot." A motion to exclude the answer was allowed, and the court said, "You can ask his opinion about it." He was then asked, "Well, in your opinion could you determine that without regard to any text book material, taking into consideration the other elements I have given you?" An objection to the question having been overruled the witness answered, "My opinion is that it cannot be determined by that data on those facts." The question was asked in several forms. All were objected to by petitioner and the objections overruled. Witnesses Greeley, Maury, Caldwell and Warren testified for petitioner that in making their deductions they used no text book formulas. Without giving details as to their qualifications, the evidence shows that from technological qualification, varied and long experience in hydraulic practice in private, municipal and governmental employment, the witnesses were qualified to testify touching the question propounded to them. Maury prepared "Exhibit 1," made the basis of the testimony. The answer of Goodell to the question propounded to him was admissible as his expert opinion on the facts embraced in the question, and the court did not err in overruling the objection.

It is contended that the court erred in refusing to admit in evidence appellant's "Exhibit 1." Appellant says the practice is to receive in evidence models, maps and diagrams for the purpose of giving more accurate information of objects or places which cannot be conveniently shown or described to the jury. There is no doubt such documents may conduce to a clearer understanding of testimonial evidence, and, if of the character to afford such light, will be received in evidence for the purpose. In *Reinke* v. *Sanitary District,* 260 Ill. 380, and in *Smith* v. *Sanitary District,* 260 id. 453, such documents were received. It is also true, as

contended by counsel, that diagrams and plats offered, and which contain matter not proper to go to the jury, will be admitted if the objectionable matter is expunged. (*Justen v. Schaaf*, 175 Ill. 45.) But the question presented cannot, except in an academic manner, be discussed here, for the reason that the document to which objection was sustained is not included in the abstract. No exhibits are included in it. Other questions are discussed that will not be noticed, material documents and documentary evidence upon which they are predicated not being abstracted. The alleged error in admitting appellee's "Exhibit 2" is not determined for the same reason.

Instruction No. 1 given for appellees told the jury that "in ascertaining the amount of compensation and damages, if any, which the defendants are entitled to receive, they should take into consideration not only the value of the land taken, (if you find any will be taken,) but all facts shown by the evidence that tend to produce damages as, that the tract of land, a part of which is taken, (if you so find from the evidence,) is left in a worse condition for the purpose for which it is best suited, also, the inconvenience of ingress and egress to and from any portions of the property not taken, the damage to the tile drainage, if such is shown by the evidence, and all other inconveniences and damage that the property of the defendants may sustain in its use, not only for the present, but for the entire future, which you may find from the evidence will diminish the fair, cash market value of said land."

The petition does not seek to take land. It averred that the stream flowing through the lands of appellees was the natural outlet for surface and sub-surface drainage, and that appurtenant to each of the tracts invested in the respective owners thereof and parties interested therein are private easements, interests, property or rights to have the flow of the stream through, over and upon the lands described maintained in its natural state, and those easements,

interests, property or rights will be taken, damaged or interfered with by the construction and maintenance of petitioner's dam. By the petition the relief sought was, and is, "to acquire so much of said easements, interests, property and rights as will be taken, damaged or interfered with, in order that petitioner may have the right to install, construct and maintain such a dam." The right sought to be acquired in the constitutional manner is an incorporeal right—an easement to have the water to be impounded by appellant's dam pass back, upon and through the natural course of drainage over the superjacent lands of appellees. When the case was under review (319 Ill. 66) upon the judgment of the county court dismissing the petition, it was held that the proceeding does not seek to take land. For that reason, if for no other, the instruction is indefensible. But the jury by the instruction were given an unrestrained latitude in the assessment of damages. They were told that in ascertaining the amount of compensation and damages "which the defendants are entitled to receive," they should consider not only the value of the lands but all facts that tend to produce damage, if shown by the evidence. What facts the jury might consider cannot be known. What appellees were "entitled to receive" was a question of law and should not have been submitted to the jury—certainly not in that form. Another valid objection to the instruction is, it was made applicable to the lands of Deterding and of Vollentine. Their situations differ at least with reference to the bases for damages. Again, the jury, in applying the evidence, were instructed to take into consideration "all facts shown by the evidence that tend to produce damage," followed by a recital of some facts deemed to have a tendency to produce damage. The jury should at least have been instructed to consider all evidence touching the question of damage, and the elements and measure of damages should have been included in the instruction. The court erred in giving the instruction.

Appellees say the instruction has been approved time and again, and that the comments of this court on the instruction have been to the effect that it is correct, and they cite seven cases, among them *Department of Public Works* v. *Griffin,* 305 Ill. 585. None of them support it.

It is contended the court improperly refused instructions numbered 1, 4, 6, 7 and 8. The first reads:

"The court further instructs the jury, that in assessing the respondents' compensation, you should not assess the same on the basis of what the owner would take for the rights to be acquired, or what you would take and let the dam remain in place if you were the owner. Neither should you assess such compensation on the basis of what the dam or its maintenance may be worth to the petitioner. These are improper to be taken into consideration, in assessing the compensation. You should, at all times keep in mind that the decrease in the actual fair cash market value of the respondents' lands by reason of the construction and maintenance of the dam, is the proper measure of the compensation which you are to ascertain in this case."

It was a proper cautionary instruction and should have been given. No other of the series covered the subject. It is an adaptation to the facts of this case of an instruction given in *Kiernan* v. *Chicago, Santa Fe and California Railway Co.* 123 Ill. 188, in an eminent domain case. No valid objection to it is pointed out by appellees and a careful consideration of it discloses no impropriety in it. The first two clauses are certainly unobjectionable. If the damages should not be assessed upon the basis of those matters they should not be taken into consideration in assessing the damages. The proper measure of damages and compensation was given in the subsequent part of the instruction. *Kiernan case, supra.*

The fourth refused instruction is substantially covered by the sixteenth given, and it was not, therefore, error to

refuse it. The sixth instruction refused was covered by the seventh given for appellant. It is not necessary or proper to encumber the record with instructions covering the same matters, differing only in verbiage. Such practice tends rather to confuse than to enlighten the jury. The seventh refused instruction was not improperly refused, because the jury were told in different instructions that their verdict should be grounded upon the evidence as to facts, and in No. 16 given, the jury were cautioned as to the use of testimony given by witnesses affected by prejudice, bias, inability to give reasons for their testimony, or other reasons, and to limit the use of such evidence, in considering it, to such weight as on a consideration of all the evidence the jury believed it entitled to. The eighth refused instruction related to the effect of the view of the premises by the jury, and, while not improper as a statement of the law on that subject, it was, in effect, covered by the third instruction given for appellant.

The damages assessed are large and are seemingly beyond just compensation for any injury disclosed by the evidence. The damages must be direct and proximate and not such as are merely possible or may be conceived by conjecture or surmise. It is difficult to justify the amount awarded to appellees in view of all of the evidence upon which damages may be legally assessed.

The judgment of the county court is reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*