JOHN EVANS, appellant, v. HENRY W. MERRIWEATHER, appellee.

*Appeal from Greene.*

The language of all the authorities is, that water flows in its natural course, and should be permitted to flow, so that all through whose lands it naturally flows, may enjoy the privilege of using it. The property in the water, by virtue of the riparian ownership, is in its nature usufructuary, and consists, in general, not so much of the fluid itself, as of the advantage of its impetus.

A riparian proprietor, though he has an undoubted right to use the water of a stream, for hydraulic and manufacturing purposes, must so use it as to do no injury to any other riparian proprietor.

Each riparian proprietor is bound to make such a use of running water as to do as little injury to those below him, as is consistent with a valuable benefit to himself.

Where the stream is small, and does not furnish water more than sufficient to supply the natural wants of the different proprietors living on it, none of the proprietors can use the water for either irrigation or manufactures.

Where the water of a stream is not wanted to supply natural wants, and there is not sufficient for each proprietor living on the stream to carry on his manufacturing purposes, and there is no contract or grant, neither proprietor has a right to use all the water; all have a right to participate in its benefit, and an action will lie against a party who diverts or consumes the whole of the stream.

Where all have a right to participate in a common benefit, and no one can have an exclusive enjoyment, no rule, from the very nature of the case, can be laid down, as to how much each may use, without infringing upon the rights of others. In such cases it must be left to the jury to determine whether the party complained of has used, under all the circumstances, more than his just proportion.

Where an upper riparian proprietor forbade his workmen to divert a stream, upon which his steam mill was situated, and one of them built a dam across it, near the mill, and diverted it for the use of the mill, and the proprietor lived only about half a mile off, and was often at the mill: *Held,* that a jury might fairly infer that he was conversant with the manner with which his mill was supplied with water, and that he either countermanded his instructions, or acquiesced in the construction of the dam, after it was erected.

Where a party avails himself of the illegal act of his servant, the law presumes he authorized it.

Where the damages are small, and justice, upon the whole, has been done, the Supreme Court ought not to remand a cause to see if a jury, upon another trial, would not give less, even if the true principles which govern the case were not correctly given to the jury.

THIS cause was heard in the Court below, at the April term, 1839, before the Hon. Wm. Thomas and a jury. Verdict and judgment were rendered for the plaintiff for $150 damages. The defendant appealed to this Court.

C. WALKER, R. L. DOYLE, and D. A. SMITH, for the appellant, cited Angell on Water Courses, Ch. 1, § 4; 3 Kent's Com. 444—8; Platt v. Johnson et al., 15 Johns. 213; Martin v. Bigelow, 2 Aiken (Vt.) 184; Merritt v. Brinkerhoff, 17 Johns. 306; 1 East 106; 17 Mass. 508, 510; 2 Kent's Com. 259–60; 2 Espinasse's N. P., Gould's ed., 220; Croft v. Allison, 4 Barn & Ald. 590; 5 N. H. Rep. 251; 3 Johns. 64; Angell on Water Courses 144; 2 Watts 327; 8 Mass. 136.

J. J. HARDIN and S. T. LOGAN, for the appellee, cited 2 Tuck. Com. 293; 1 Chit. Blac. Com. 343—5 and note; 1 Saund. Plead.

and Ev. 407–8; 3 Wils. 313; 2 Blac. Com. 10; 2 Kent's Com. 257, 263–4; 3 Kent's Com., 3d ed., 353—8, 440, in note, 444–5; 1 Chit. Plead., note, 132; 2 Blac. Com. 217; 3 Blac. Com. 218, 220—2; 10 Johns. 241; 17 Johns. 321; 1 Wils. 174; 12 Wend. 331; Maddox 129; 3 Caines 320; 17 Mass. 289; Peake 489, 492, notes.

LOCKWOOD, Justice, delivered the opinion of the Court: (1)

This was an action on the *case*, brought in the Greene Circuit Court, by Merriweather against Evans, for obstructing and diverting a water course. The plaintiff obtained a verdict, and judgment was rendered thereon. On the trial the defendant excepted to the instructions asked for and given, at the instance of the plaintiff. The defendant also excepted, because instructions, that were asked by him, were refused. After the cause was brought into this Court, the parties agreed upon the following statement of facts, as having been proved on the trial, to wit: "It is agreed between the parties to this suit, that the following is the statement of facts proved at the trial in this case, and that the same shall be considered as part of the record by the Court, in the adjudication of this cause.....Smith & Baker, in 1834, bought of T. Carlin six acres of land, through which a branch run, and erected a steam mill thereon, They depended upon a well and the branch for water in running their engine....About one or two years afterwards, John Evans bought of T.. Carlin six acres of land, on the same branch, above and immediately adjoining the lot owned by Smith & Baker, and erected thereon a steam mill, depending upon a well and the branch for water in running his engine.

"Smith & Baker, after the erection of Evans' mill, in 1836 or 1837, sold the mill and appurtenances to Merriweather, for about $8000. Evans' mill was supposed to be worth $12,000. Ordinarily there was an abundance of water for both mills; but in the fall of 1837, there being a drought, the branch failed, so far that it did not afford water sufficient to run the upper mill continually. Evans directed his hands not to stop, or divert the water, in the branch; but one of them employed about the mill did make a dam across the branch, just below Evans' mill, and thereby diverted all the water in the branch into Evans' well. Evans was at home, half a mile from the mill, and was frequently about his mill, and evidence was introduced conducing to prove that he might have known that the water of the branch was diverted into his well. After the diversion of the water into Evans' well, as aforesaid, the branch went dry below, and Merriweather's mill could not and did not run, in consequence of it, more than one day in a week, and was then supplied with water from his well. Merriweather then brought this suit, in three or four weeks after the putting of the

(1) CATON, Justice, did not hear the argument in this case, and gave no opinion; and DOUGLASS, Justice, having been of counsel, likewise gave no opinion.

·dam across the branch for the diversion of the water, and obtained a verdict for $150. This suit, it is admitted, is the first between the parties litigating the right as to the use of the water. It is further ·agreed, that the branch afforded usually sufficient water for the supply of both mills, without materially affecting the size of the current, though the branch was not depended upon exclusively for that purpose. Furthermore, that at the time of the grievances complained of by the plaintiff below, the defendant had water hauled in part for the supply of his boilers. That the dam was made below the defendant's well, across the branch, which diverted ·as well the water hauled and poured out into the branch above the well, as the water of the branch, into the defendant's well.

> "HARDIN & LOGAN, for Merriweather.
> "SHIELDS & SMITH, for Evans."

Upon this state of facts, the question is presented, as to what extent riparian proprietors, upon a stream not navigable, can use the water of such stream? The branch mentioned in the agreed statement of facts, is a small natural stream of water, not furnishing, at all seasons of the year, a supply of water sufficient for both mills. There are no facts in the case showing that the water is wanted for any other than milling purposes, and for those purposes to be converted into steam, and thus entirely consumed. In an early case decided in England, (1) it is laid down that "A water course begins ·' *ex jure naturæ*,' and having taken a certain course naturally, cannot be diverted." The language of all the authorities is, that water flows in its natural course, and should be permitted thus to flow, so that all through whose land it naturally flows, may enjoy the privilege of using it. The property in the water, therefore, by virtue of the riparian ownership, is in its nature usufructuary, and consists, in general, not so much of the fluid itself, as of the advantage of its impetus. (2) A riparian proprietor, therefore, though he has an undoubted right to use the water for hydraulic or manufacturing purposes, must so use it as to do no injury to any other riparian proprietor. Some decisions, in laying down the rights of riparian proprietors of water courses, have gone so far as to restrict their right in the use of water flowing over their land, so that there shall be no diminution in the quantity of the water, and no obstruction to its course. The decisions last referred to cannot, however, be considered as furnishing the true doctrine on this subject. Mr. Justice Story, in delivering the opinion of the Court, in the case of Tyler *v.* Wilkinson, (3) says, "I do not mean to be understood as holding the doctrine that there can be no diminution whatever, and no obstruction or impediment whatever, by a riparian proprietor in the use of water as it flows; for that would be to deny any valuable use of it. There may be, and there must be,

(1) Bulstrode 339.     (2) 2 Barn & Cres. 510; Angell on Water Courses, 11.
(3) 4 Mason 400.

of that which is common to all, a reasonable use. The true test of the principle and extent of the use is, whether it is to the injury of the other proprietors or not. There may be diminution in quantity, or a retardation or acceleration of the natural current, indispensable for the general and valuable use of the water, perfectly consistent with the use of the common right. The diminution, retardation, or acceleration, not positively and sensibly injurious, by diminishing the value of the common right, is an implied element in the right of using the stream at all. The law here, as in many other cases, acts with a reasonable reference to public convenience and general good, and is not betrayed into a narrow strictness, subversive of common use, nor into an extravagant looseness, which would destroy private rights." The same learned judge further says, " That of a thing common by nature, there may be an appropriation by general consent or grant. Mere priority of appropriation of running water, without such consent or grant, confers no exclusive right." This doctrine is fully sustained by English and American cases. (1)  In the case of Arnold *v.* Foot, (2) it was held, where a defendant had diverted the water from a spring rising on his land, to irrigate his meadow, " that he had a right to use so much as is necessary for his family and his cattle, but he has no right to use it for irrigating his meadow, if thereby he deprive the plaintiff of the reasonable use of the water in its natural channel."

Each riparian proprietor is bound to make such a use of running water, as to do as little injury to those below him, as is consistent with a valuable benefit to himself. The use must be a reasonable one. Now the question fairly arises, is that a reasonable use of running water by the upper proprietor, by which the fluid itself is entirely consumed? To answer this question satisfactorily, it is proper to consider the wants of man in regard to the element of water. These wants are either natural or artificial. Natural are such as are absolutely necessary to be supplied, in order to his existence. Artificial, such only, as by supplying them, his comfort and prosperity are increased. To quench thirst, and for household purposes, water is absolutely indispensable. In civilized life, water for cattle is also necessary. These wants must be supplied, or both man and beast will perish.

The supply of man's artificial wants is not essential to his existence; it is not indispensable; he could live if water was not employed in irrigating lands, or in propelling his machinery. In countries differently situated from ours, with a hot and arid climate, water doubtless is absolutely indispensable to the cultivation of the soil, and in them, water for irrigation would be a natural want. Here it might increase the products of the soil, but it is by no means essential, and cannot therefore be considered a natural want of man.

(1) Angell on Water Courses, 23.  (2) 12 Wend. 330.

So of manufactures, they promote the prosperity and comfort of mankind, but cannot be considered absolutely necessary to his existence; nor need the machinery which he employs be set in motion by steam.

From these premises would result this conclusion; that an individual owning a spring on his land, from which water flows in a current through his neighbor's land, would have the right to use the whole of it, if necessary to satisfy his natural wants. He may consume all the water for his domestic purposes, including water for his stock. If he desires to use it for irrigation or manufactures, and there be a lower proprietor to whom its use is essential to supply his natural wants, or for his stock, he must use the water so as to leave enough for such lower proprietor. Where the stream is small, and does not supply water more than sufficient to answer the natural wants of the different proprietors living on it, none of the proprietors can use the water for either irrigation or manufactures. So far then as natural wants are concerned, there is no difficulty in furnishing a rule by which riparian proprietors may use flowing water to supply such natural wants. Each proprietor in his turn may, if necessary, consume all the water for these purposes. But where the water is not wanted to supply natural wants, and there is not sufficient for each proprietor living on the stream, to carry on his manufacturing purposes, how shall the water be divided? We have seen that without a contract or grant, neither has a right to use all the water; all have a right to participate in its benefits. Where all have a right to participate in a common benefit, and none can have an exclusive enjoyment, no rule, from the very nature of the case, can be laid down, as to how much each may use without infringing upon the rights of others. In such cases, the question must be left to the judgment of the jury, whether the party complained of has used, under all the circumstances, more than his just proportion.

It appears from the facts agreed on, that Evans obstructed the water by a dam, and diverted the whole into his well. This diversion, according to all the cases, both English and American, was clearly illegal. For this diversion, an action will lie. It, however, was contended that Evans forbid the construction of the dam, by which the water was diverted into his well. If a servant do an act against the consent of the master, the latter is not liable. In this case, however, a jury might fairly infer from the fact, that as Evans lived near the mill, and was frequently at it, he must have been conversant of the manner in which his mill was supplied with water, and that he either countermanded the instructions, or acquiesced in the construction of the dam, after it was erected. Having availed himself of the illegal act of his servant, the law presumes he authorized it. Having arrived at the conclusion that an action will lie in behalf of Merriweather against Evans, for obstructing and diverting the water course mentioned in the plain-

tiff's declaration, I have not deemed it necessary to examine the instructions given by the Court, to see if they accord with the principles above laid down. Having decided that the plaintiff below has a right to recover on the facts, whether the instructions were right or wrong would not vary that result. It is possible that if the true principles which govern this action had been correctly given to the jury, the damages might have been either less or more than the jury have given; but in this case, as the damages are small, the Court ought not, where justice has upon the whole been done, to send the case back, to see if a jury, upon another trial, would not give less.

For these reasons, I am of opinion that the judgment ought to be affirmed with costs.

*Judgment affirmed.*