**2022 IL 127511**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127511)

ADAM HOLM *et al.*, Appellants, v. PETER KODAT *et al.*, Appellees.

*Opinion filed June 16, 2022.*

JUSTICE CARTER delivered the judgment of the court, with opinion.

Justices Garman, Theis, Michael J. Burke, and Overstreet concurred in the judgment and opinion.

Justice Neville specially concurred, with opinion, joined by Chief Justice Anne M. Burke.

**OPINION**

¶ 1    In this appeal, we address whether this court's decision in *Beacham v. Lake Zurich Property Owners Ass'n*, 123 Ill. 2d 227 (1988), or Illinois common law grants a riparian owner on a nonnavigable river or stream the right to use that waterway to cross the property of another riparian owner without that owner's

permission. The circuit court and the appellate court both answered that question in the negative. For the reasons that follow, we affirm the judgments of the lower courts.

¶ 2                                        I. BACKGROUND

¶ 3        This case arose from a dispute among riparian property owners concerning the use of the nonnavigable Mazon River in Grundy County, Illinois. Specifically, the parties disagreed on whether plaintiffs, Adam Holm, Daniel Holm, Loretta Holm, and Nick Holm, have the right to kayak on the Mazon River through neighboring properties owned by defendants, Peter Kodat, James Benson, Benson Marian Family Trust, Mark A. Norton, Wilfred K. Robinson, and John Heath, without those defendants' permission.

¶ 4                          A. Plaintiffs' First Amended Verified Complaint

¶ 5        In December 2018, plaintiffs filed a two-count, first amended, verified complaint seeking declaratory and injunctive relief in the circuit court of Grundy County. Count I sought declaratory relief against the defendant property owners. Plaintiffs requested an order declaring that they had the right as riparian owners to kayak along the entire length of the Mazon River, including through property owned by the defendants, "f[r]ee and clear from any claim of trespass" by the defendants. In count II, plaintiffs named Grundy County as a defendant and sought injunctive relief barring the County from arresting, or threatening to arrest, plaintiffs while kayaking on the Mazon River.[1]

¶ 6        In their complaint, plaintiffs explained that the Mazon River is 28 miles in length and is a tributary of the Illinois River. It generally flows in a north or northwest direction through Grundy County, Illinois, until its confluence with the Illinois River south of Morris, Illinois. Near the confluence, there are exposures of Francis Creek Shale that contain large deposits of fossils. This area of the Mazon River is a world-famous Lagerstatten site, or a sedimentary deposit that exhibits

---

[1]On April 8, 2019, the circuit court granted Grundy County's motion to dismiss with prejudice all claims against the county but allowed the litigation to proceed against the remaining defendants in count I. Accordingly, Grundy County is not a party to this appeal.

extraordinary fossils with exceptional preservation. It is important to paleontologists and fossil collectors and was declared a National Historic Landmark in 1997.

¶ 7   Between 2015 and 2017, plaintiffs bought two properties along the Mazon River. Plaintiffs' first property consists of approximately 33 acres of landlocked, unimproved real estate with no road access (landlocked property). Plaintiffs' second property consists of approximately nine acres of unimproved real estate, with road access from Oxbow Road (access property). Plaintiffs operate a seasonal fossil hunting business on both properties, and they collect fossils to sell to paleontologists and collectors.

¶ 8   According to plaintiffs' complaint, their landlocked property contains a large number of fossils because of its relative lack of accessibility. Plaintiffs use kayaks on the Mazon River to travel from their access property to their landlocked property. After collecting fossils at their landlocked property, plaintiffs load the fossils into their kayaks for transport on the Mazon River further downstream to the Pine Bluff Road Bridge. During the course of their travel, plaintiffs ride their kayaks on the Mazon River through properties owned by defendants. After arriving at the Pine Bluff Road Bridge, plaintiffs unload their fossils and remove their kayaks from the river within the public right of way owned by Grundy County.

¶ 9   Plaintiffs' complaint further alleged that defendant Peter Kodat operates a competing fossil business on the Mazon River. According to plaintiffs, Kodat "organized" the other defendant property owners to sign written trespass notices forbidding plaintiffs from kayaking on the river through the defendants' respective properties. Plaintiffs claimed that this action was meant to prevent plaintiffs from accessing the fossils on their landlocked property. Plaintiffs attached the trespass notices from the respective defendant property owners to their complaint. Each identical trespass notice provided:

> "It has come to my attention that you have been trespassing on properties in the area and have been taking rocks and fossils. You are hereby notified that you are NOT authorized to be on any portion of this property at any time and you are not authorized to take any rocks or other items of any kind whatsoever from this property."

¶ 10 On one occasion, defendant Kodat called the Grundy County Sheriff's Office to report that plaintiffs Adam and Daniel Holm were collecting fossils near Kodat's property. Ultimately, a Grundy County sheriff's sergeant arrested Adam and Daniel Holm for trespassing and served them with criminal complaints for trespassing. Formal criminal charges, however, were not filed.

¶ 11                    B. Cross-Motions for Summary Judgment

¶ 12 In June 2019, plaintiffs filed a motion for summary judgment on count I of their complaint seeking declaratory relief. Plaintiffs noted that under Illinois law a riparian owner is one who owns land bordering a running stream and that the natural flow of the water cannot be diverted, increased, diminished, or polluted without the owner's consent. *Leitch v. Sanitary District of Chicago*, 369 Ill. 469 (1938). Plaintiffs further argued that under this court's decision in *Beacham*, 123 Ill. 2d 227, they had the right as riparian owners to access the entire surface water of the Mazon River. According to plaintiffs, *Beacham* established a public policy in Illinois to allow riparian owners the recreational use and enjoyment of the entire surface of a body of water. Thus, plaintiffs asserted that defendants were prohibited as a matter of law from restricting plaintiffs' access to the surface water of the Mazon River.

¶ 13 In August 2019, defendants filed a cross-motion for summary judgment. Defendants alleged in their motion that plaintiffs routinely trespassed on their respective properties to remove fossils without their permission, effectively "stealing certain valuable items from the bed of the creek owned by [d]efendants." Defendants claimed that plaintiffs continued to trespass and remove fossils without defendants' permission, despite repeated requests from defendants to stop that conduct and the involvement of the Grundy County Sheriff's Office.

¶ 14 Defendants argued that plaintiffs did not have a right to kayak on the Mazon River through defendants' properties without defendants' permission. Defendants maintained that *Beacham* was inapplicable because that decision was limited to lakes.

¶ 15 Defendants acknowledged that plaintiffs, as riparian owners, had the right to the full use of the Mazon River on their property. However, plaintiffs' riparian

rights did not extend to defendants' property on the Mazon River. Defendants argued that, because the Mazon River is a nonnavigable stream, Illinois law does not recognize a right to travel over that waterway without permission of the riparian owner. Thus, as a matter of law, defendants can restrict plaintiffs' access to those portions of the Mazon River on defendants' property.

¶ 16                                C. Circuit Court's Decisions

¶ 17        In October 2019, the circuit court held a hearing on the parties' cross-motions for summary judgment. Following the hearing, the court granted plaintiffs' motion for summary judgment and denied defendants' cross-motion for summary judgment. Relying on this court's decision in *Beacham*, the court found that plaintiffs had a right to use of the surface water of the Mazon River to travel from their access property to their landlocked property and then from their landlocked property to the Pine Bluff Road bridge.

¶ 18        In January 2020, defendants filed an amended motion to reconsider and vacate the circuit court's October 2019 order. Defendants argued that, because it was undisputed that the Mazon River was a nonnavigable waterway, the circuit court was required to follow long-standing Illinois common law that a riparian owner of a nonnavigable waterway has a private property interest to the middle of the waterway that includes a right to exclude others from the property. Defendants further asserted that *Beacham* applied only to lakes.

¶ 19        After a hearing on defendants' motion to reconsider, the circuit court agreed with defendants that *Beacham* was distinguishable and reversed its original decision. The court explained as follows:

> "[B]ased on the law that's been provided to me, I'm going to grant the defendants' motion and deny the plaintiffs' motion upon reconsideration on the grounds that the fact that the Mazon River is factually non-navigable and the fact that there is private ownership of the bed of the river, *** [which] carries with it the exclusivity of ownership in the water above the property owned by the abutting owners."

The court also concluded that plaintiffs' riparian rights of access were not superior to defendants' rights of private ownership.

¶ 20   Accordingly, in March 2020, the circuit court entered a written order that vacated its prior October 2019 order. The order also granted defendants' motion for summary judgment and denied plaintiffs' motion for summary judgment.

¶ 21                         D. Appellate Court Decision

¶ 22   On appeal, plaintiffs argued that the trial court erred in granting summary judgment to defendants. Citing *Beacham*, plaintiffs contended that as riparian owners they had a right to access the entire Mazon River. The appellate court disagreed, relying on "well-established case law governing riparian rights and the navigability of Illinois rivers and streams." 2021 IL App (3d) 200164, ¶ 15.

¶ 23   After reviewing this court's decision in *Beacham*, the appellate court declined to extend *Beacham*'s holding to the nonnavigable Mazon River. *Id.* ¶ 27. Under controlling Illinois law on riparian rights, the court concluded that "the riparian owner of each individual parcel of private property, situated along the Mazon River, may lawfully bar access, within their easily ascertainable property lines, to any person, including their riparian neighbor." *Id.* ¶ 31. Thus, the court affirmed the circuit court's order granting summary judgment in favor of defendants. *Id.* ¶ 35.

¶ 24   We allowed plaintiffs' petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2020). The Forest Preserve District of Will County was granted leave to file an *amicus curiae* brief in support of plaintiffs' position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). The Illinois Agricultural Association was granted leave to file an *amicus curiae* brief in support of defendants' position. *Id.*

¶ 25                              II. ANALYSIS

¶ 26   On appeal, plaintiffs argue that the circuit court erred in granting summary judgment to defendants. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). When, as

here, cross-motions for summary judgment are filed, the parties "agree that only questions of law are involved and invite the court to decide the issues based on the record." *State Farm Mutual Automobile Insurance Co. v. Elmore*, 2020 IL 125441, ¶ 19. We review *de novo* the circuit court's decision on a motion for summary judgment. *Id.*

¶ 27     In Illinois, an owner of land that borders a body of water or watercourse is entitled to the use of that water, a legal concept referred to as "riparian rights." *Alderson v. Fatlan*, 231 Ill. 2d 311, 318 (2008) (citing Black's Law Dictionary 1352 (8th ed. 2004)). When the landowner's property is adjacent to a river or waterway, he or she owns to the center of the waterway. *Schulte v. Warren*, 218 Ill. 108, 117 (1905). Thus, if a riparian owner owns both sides of the river, they own "the whole of the bed of the stream to the extent of the length of his lands upon it." *People ex rel. Deneen v. Economy Light & Power Co.*, 241 Ill. 290, 318 (1909).

¶ 28     Riparian rights exist by operation of law and solely because the property abuts a body of water. *Alderson*, 231 Ill. 2d at 318. As we have explained, " 'riparian rights of property owners abutting the same body of water are equal, and no such property owner may exercise its riparian rights in such a manner so as to prevent the exercise of the same rights by other similarly situated property owners.' " *Id.* at 318-19 (quoting *Knaus v. Dennler*, 170 Ill. App. 3d 746, 750 (1988)).

¶ 29     This court has long recognized that "riparian rights apply to all flowing streams whether navigable or non-navigable, but with respect to navigable streams, the right of the riparian owner is subject to a public easement to use the river for navigation purposes." *Leitch*, 369 Ill. at 475. A waterway is navigable and subject to a public easement if it naturally, by customary modes of transportation, is "of sufficient depth to afford a channel for use for commerce." *DuPont v. Miller*, 310 Ill. 140, 145 (1923). If, however, the waterway is nonnavigable, the riparian owner owns "the bed of the stream *** absolutely, free from any burdens in favor of the public." *Economy Light & Power*, 241 Ill. at 318 (citing *Washington Ice Co. v. Shortall*, 101 Ill. 46 (1881)).

¶ 30     Here, it is undisputed that the Mazon River is a nonnavigable river and, therefore, has no public easement for access. Plaintiffs assert that because they are riparian owners on the Mazon River they have the right to kayak on the entire river and cross the properties of other riparian owners, even without those owners'

permission. Plaintiffs advance two arguments to support their position—the first predicated on a so-called "civil law rule" from *Beacham* and the second based on the common-law riparian right of "reasonable use" of water. We address each of plaintiffs' arguments in turn, beginning with our decision in *Beacham*.

¶ 31                    A. *Beacham* and the Civil-law Rule for Nonnavigable Lakes

¶ 32        In *Beacham*, we addressed a dispute among riparian owners on the use of the surface water of a 240-acre private nonnavigable lake for boating purposes. *Beacham*, 123 Ill. 2d at 228. The plaintiff, Beacham, owned between 15% to 20% of the lakebed and operated a business that rented boats to the public for use on the lake. A group of other riparian owners, represented by the defendant, the Zurich Property Owners Association, instituted a quota and permit system for boats on the lake and tried to limit Beacham's use of the lake by issuing her warnings. The association also unsuccessfully prosecuted Beacham for trespass. *Id.* As a result, Beacham filed an action for declaratory and injunctive relief seeking a declaration that she could use the entire lake surface. *Id.* at 229.

¶ 33        To resolve the dispute in *Beacham*, we noted that two different legal approaches governed the use of lakes by riparian owners: (1) a common-law view that allows an owner of part of the lake to exclude from the surface of the overlying water all other persons, including those who owned other parts of the lake bed, and (2) a civil-law rule that provides the owner of a part of the lake bed the right to the reasonable use and enjoyment of the entire lake surface. *Id.* at 230-31.

¶ 34        This court observed in *Beacham* that the common-law approach had been rejected by some courts based on the difficulties involved in establishing and obeying definite property lines on the lake surface, and other impractical consequences, such as the erection of booms, fences, or barriers on lakes. *Id.* 231-32. In contrast, the civil-law approach promoted the recreational use and enjoyment of lakes. *Id.* at 231. Reviewing the two approaches, this court determined that the civil-law approach should be adopted for nonnavigable lakes in Illinois. *Id.* at 232.

¶ 35        Accordingly, we held in *Beacham* that

"where there are multiple owners of the bed of a private, nonnavigable lake, such owners and their licensees have the right to the reasonable use and enjoyment of the surface waters of the entire lake provided they do not unduly interfere with the reasonable use of the waters by other owners and their licensees." *Id.*

We remanded the matter to the circuit court to determine whether Beacham's use of the lake was reasonable. *Id.*

¶ 36    Here, plaintiffs argue that extending *Beacham*'s holding to a nonnavigable river such as the Mazon River "results in a fair balance where riparian owners can fully enjoy a nonnavigable river while limiting the burden that use creates on other landowners" because the rule "restricts the use of any nonnavigable body of water to riparian owners and their licensees." Defendants respond that our decision in *Beacham* should be limited to natural nonnavigable lakes.

¶ 37    Notably, in *Beacham* we were presented with two legal approaches from several jurisdictions regarding the use of the surface water of a nonnavigable lake by riparian owners. See *id.* at 231 (citing and reviewing cases from Arkansas, Georgia, Indiana, New Jersey, New York, Pennsylvania, Texas, Virginia, Florida, Michigan, Minnesota, and Washington). There is, however, no comparable body of law applying the so-called civil-law rule to nonnavigable rivers and streams.

¶ 38    Nonetheless, plaintiffs ask us to extend *Beacham* to nonnavigable rivers and streams. According to plaintiffs, there is no meaningful distinction between a lake and a river or stream for purposes of the civil-law rule from *Beacham.* We disagree.

¶ 39    A lake is essentially a flat expanse of relatively still water. See *Nottolini v. La Salle National Bank*, 335 Ill. App. 3d 1015, 1018 (2003) (defining a lake as " 'a reasonably permanent body of water substantially at rest in a depression in the surface of the earth, if both depression and body of water are of natural origin or a part of a watercourse' " (quoting 78 Am. Jur. *Waters* § 108 (2002))). In contrast, streams and rivers can have widely varying topographical features and characteristics, including differing currents, depth, and width that may change with the seasons. Naturally, then, a riparian owner's use of a lake will likely differ from a riparian owner's use of a river or stream.

¶ 40    For example, as plaintiffs explain in their brief, they can only kayak downstream on the Mazon River from their access property to their landlocked property because of the river's current. This requires plaintiffs to kayak through properties of other riparian landowners to reach a public access point of departure, which is the precise situation that resulted in the dispute in this case. A lake, in contrast, is an open body of water with no current where the riparian owners may enter and exit the water from their own property.

¶ 41    In addition, the property boundaries along the comparatively narrow and linear Mazon River are much easier to identify and verify when compared to the property boundaries extending under the surface water of the 240-acre lake in *Beacham*. As the appellate court observed, "the physical characteristics of the Mazon River, unlike those of the private, nonnavigable lake in *Beacham*, do not involve the difficulties or impracticalities related to establishing and obeying 'definite property lines.' " 2021 IL App (3d) 200164, ¶ 27 (quoting *Beacham*, 123 Ill. 2d at 232).

¶ 42    This distinction between property boundaries on a lake versus a river or stream has been recognized in Illinois law for well over a century. See *Fuller v. Shedd*, 161 Ill. 462, 483 (1896) (observing that "[t]he determination of boundary lines to the center of the river is not attendant with any serious difficulty, but the irregular borders of a lake would render the determination of lines in the bed of the lake between riparian proprietors of almost impossible solution"); see also *Smith v. City of Greenville*, 115 Ill. App. 3d 39, 42 (1983) (noting that "[i]n Illinois the rule for determining a riparian proprietor's title to land bounded by a stream or river differs markedly from the rule for determining a riparian proprietor's title to land bounded by a lake or pond").

¶ 43    We were also concerned in *Beacham* with the "impractical consequences" of establishing property lines on lakes related to the installation of fences or barriers on the surface water of the lake. *Beacham*, 123 Ill. 2d at 231-32. This concern is arguably less compelling along nonnavigable streams and rivers, which typically are much narrower than a lake. In fact, fencing may be warranted or even necessary to identify property lines on nonnavigable rivers and streams that can extend for many miles in any given direction. This is particularly true in agricultural areas or when livestock are kept near nonnavigable streams. See 510 ILCS 55/1 (West 2018)

(imposing civil liability on livestock owners if they fail to prevent their livestock from running at large and their livestock cause damages).

¶ 44    Ultimately, we conclude that our decision in *Beacham* should be limited to the body of water at issue in that case—a nonnavigable natural lake. In our opinion, a nonnavigable lake is sufficiently distinct from a nonnavigable river or stream to render *Beacham* inapplicable. See also *Alderson*, 231 Ill. 2d at 312-13 (declining to extend *Beacham* to an artificial man-made lake comprised of a water-filled quarry used for recreational purposes). Therefore, we will not extend *Beacham*'s holding to nonnavigable streams and rivers in Illinois.

¶ 45                    B. Common-Law Rule on the "Reasonable Use" of Water

¶ 46    We next consider plaintiffs' argument that Illinois common law allows riparian owners the reasonable use of the surface water of a nonnavigable river or stream on their property. Plaintiff emphasizes that, while the common law does not grant the public a right to use nonnavigable rivers or streams, the law treats riparian owners differently. Citing *Evans v. Merriweather*, 4 Ill. 492, 496 (1842), plaintiffs observe that a riparian owner is allowed the "reasonable use" of the water in the waterway. Plaintiffs argue that this riparian right to reasonable use of the water should be interpreted to include a right to use the surface water of the entire river or stream for reasonable navigational purposes.

¶ 47    Defendants respond that plaintiffs have forfeited their common-law "reasonable use" argument by not first raising that issue in the trial court. On the merits, defendants argue that the common law's recognition of a right of a riparian owner to the reasonable use of water involves direct consumptive uses of the water itself rather than using the surface to navigate the entire river or stream.

¶ 48    As a preliminary matter, we will address the merits of plaintiffs' arguments on reasonable use of water under *Evans*. The record demonstrates that the parties extensively argued, and the lower courts considered, various common-law precedents on riparian rights. Even if the reasonable use principle from *Evans* was not explicitly considered by the circuit or appellate courts, we believe the concept is sufficiently intertwined with the common-law issues argued by the parties to warrant its consideration here. See *People v. McKown*, 236 Ill. 2d 278, 310 (2010)

(when a forfeited issue is "inextricably intertwined" with other issues properly before the court, the court may exercise its discretion to review that issue).

¶ 49 Turning to *Evans*, which was decided 180 years ago, this court considered the limits of a riparian owner's use of the water in a nonnavigable stream. *Evans*, 4 Ill. at 494. We concluded that a riparian owner on a nonnavigable stream was entitled to the "reasonable use" of the water in the waterway, which was determined differently depending on whether the riparian owner's use of the waterway is "natural" or "artificial." *Id.* at 494-95.

¶ 50 Natural uses are those "absolutely necessary to be supplied, in order to [sustain the owner's] existence," and include drinking water, household purposes, and watering livestock. *Id.* at 495. A riparian owner can use all of the water flowing on his land for natural uses, even if none is left for downstream riparian owners. *Id.* at 494-95.

¶ 51 Artificial uses are those "not essential to [the riparian owner's] existence" and include crop irrigation or manufacturing purposes. *Id.* at 495. A riparian owner is not allowed to use all of the water on his land for artificial purposes but, instead, must only use his or her "just proportion" of the water that is determined on a case-by-case basis. *Id.* at 496.

¶ 52 Having reviewed *Evans*, we agree with defendants that the Illinois common-law "reasonable use" doctrine of water by riparian owners applies to direct consumptive or diversionary uses of the water. Because the doctrine is limited to the use of water on the riparian owner's property, *Evans* is not instructive on the issue presented here—the use of the surface water to enter the property of another riparian owner without their consent. See also Margit Livingston, *Public Recreational Rights in Illinois Rivers and Streams*, 29 DePaul L. Rev. 353, 358 (1980) (explaining that "[u]nder Illinois common law, the 'reasonable-use' doctrine governs consumptive and diversionary uses of water"). Thus, we find that *Evans* does not support plaintiffs' position here.

¶ 53 Plaintiffs also direct our attention to the Supreme Court of Michigan's decision in *Thompson v. Enz*, 154 N.W.29 473, 484 (Mich. 1967), which concluded that a group of riparian property owners' use of a canal constructed by a developer that connected a housing development to a natural lake was an "artificial" use subject

to the reasonable use doctrine. After identifying several factors to determine the "reasonableness" of that use, the Supreme Court of Michigan remanded the matter to the trial court to determine whether that proposed use of the canal to access the lake was reasonable under the circumstances of the case. *Id.* at 485. Plaintiffs contend that *Thompson* provides a roadmap on how to evaluate whether a riparian owner's artificial use of the entire nonnavigable waterway for navigation purposes is reasonable.

¶ 54    Plaintiffs' reliance on *Thompson* is misplaced. Notably, in *Thompson* the court determined that the arrangement between the developer and property owners regarding the canal operated as "easements for rights of way for access" and that the trial court had to consider whether the challenged used was reasonable. *Id.* at 483. No comparable situation exists in this case. Instead, defendants have regularly denied permission for plaintiffs to use the Mazon River on defendants' property, and plaintiffs do not have an easement for a right of way, or any other valid legal claim, to access property on the Mazon River that plaintiffs do not own.

¶ 55    In closing, we acknowledge plaintiffs' advancement of public policy arguments in favor of promoting the recreational use of nonnavigable streams and rivers in Illinois. According to plaintiffs, Illinois has more than 87,000 miles of rivers and streams within its borders, but only 32 rivers and streams are classified as navigable and provide a public easement for navigation. Because the majority of waterways in Illinois are nonnavigable, plaintiffs urge this court to adopt a legal rule granting a riparian owner on a nonnavigable stream or river a right to use the entire length of that waterway to promote its reasonable recreational use.

¶ 56    In our view, the legislature is the best venue to consider plaintiffs' request for the creation of a new public policy on riparian rights for nonnavigable rivers and streams in Illinois, which constitute the majority of waterways in this state. As the parties' arguments and the *amicus curiae* briefs demonstrate, plaintiffs' request for a new public policy involves significant competing interests that we believe the General Assembly is better equipped to address. See, *e.g.*, *Manago v. County of Cook*, 2017 IL 121078, ¶ 13 (explaining that this court is not responsible for setting public policy and that the legislature is best suited for evaluating divergent public policy interests); see also 615 ILCS 5/5 (West 2018) (declaring that the Illinois Department of Natural Resources "shall upon behalf of the State of Illinois, have

jurisdiction and supervision over all of the rivers and lakes" in Illinois).

¶ 57                                   III. CONCLUSION

¶ 58        For the foregoing reasons, we decline plaintiffs' request to hold that they have a right, as riparian owners on the nonnavigable Mazon River, to use the entire length of that waterway to cross the property of other riparian owners without their permission. We affirm the judgments of the circuit court and appellate court that reached the same conclusion.

¶ 59        Judgments affirmed.

¶ 60        JUSTICE NEVILLE, specially concurring:

¶ 61        I agree with my colleagues that Illinois common law bars the plaintiffs, who are riparian owners on the nonnavigable Mazon River, from traveling or using the waterway of other riparian owners without their permission. However, I write separately because I believe it is time for Illinois to move away from its common law that limits the use of nonnavigable lakes, rivers, and streams to riparian landowners and move to the recreational navigation doctrine, so that all waterways are available to the public for recreational use.

¶ 62           I. The History of the Riparian Doctrine in the United States

¶ 63        The influence of the Napoleonic Code, which became the law of France in 1804, and its forerunners helped to spread the riparian doctrine to other European countries and provided the foundation for the riparian doctrine in England. Ludwik A. Teclaff, *What You Have Always Wanted to Know About Riparian Rights but Were Afraid to Ask*, 12 Nat. Resources J. 30 (1972). The riparian doctrine came to the United States as part of the common law of England shortly after the year 1825 and gave each owner of land upon the banks of a waterway the right to make a reasonable use of the water. *Tyler v. Wilkinson*, 24 F. Cas. 472 (C.C.D. R.I. 1827) (No. 14,312) (holding each riparian owner had a right to a reasonable use of the water); *Webb v. Portland Manufacturing Co.*, 29 F. Cas. 506, 510 (C.C.D. Me.

- 14 -

1838) (No. 17,322) (same); *Lyon v. Fishmonger's Co.* [1875] 1 A.C. 662, 671-73 (Eng.); T.E. Lauer, *The Common Law Background of the Riparian Doctrine*, 28 Mo. L. Rev. 1 (1963).

¶ 64     The United States Supreme Court in *Kansas v. Colorado*, 206 U.S. 46, 93 (1907), recognized that each state has full jurisdiction over the lands within its borders, including the beds of streams and other waters, and that it properly belongs to them by their inherent sovereignty. This right is subject only to the federal power in navigation to regulate commerce. *Id.* at 86. The Court observed that the right of the states to regulate and control the shores of tide waters and the land under them is the same as that which is exercised by the Crown of England. *Id.* at 94. Finally, the court found that a state may determine for itself whether the common-law rule of riparian rights or whether the rule in the West—the doctrine of public ownership of flowing water, that waters of natural streams may be appropriated by the state to irrigate and cultivate arid lands for beneficial purposes—shall control. *Id.*

¶ 65                         II. Riparian Rights in Illinois Waterways

¶ 66     In Illinois, riparian rights grant the owner of land adjacent to a waterway the right to use that water, whether navigable or nonnavigable. In *Schulte v. Warren*, 218 Ill. 108, 118-19 (1905), this court determined that the public has an easement for the purpose of navigation in waters that are navigable, regardless of the ownership of the soil. The question of whether waters are navigable depends upon whether they are of sufficient depth to afford a channel for commerce. *Id.* at 119; *Hubbard v. Bell*, 54 Ill. 110, 118 (1870). This court approved the definition of a navigable stream by Lord Hale in his treatise *De Jure Maris*: "a stream, to be navigable must furnish 'a common passage for the king's people,' must be 'of common or public use for the carriage of boats and lighters,' must be capable of bearing up and floating vessels for the transportation of property conducted by the agency of man." *Schulte*, 218 Ill. at 119 (quoting Matthew Hale, A Treatise *de Jure Maris et Brachiorum Ejusdem* (1888)). Thus, Illinois holds that a stream is navigable only where it affords a channel for useful commerce and is of practical utility to the public for commercial use. *People ex rel. Deneen v. Economy Light & Power Co.*, 241 Ill. 290, 332 (1909). If the waterway is navigable, the riparian owner takes title to the thread of the stream, subject to an easement in the public.

*Id.* at 318. If the waterway is nonnavigable, the riparian owner owns the title, "free from any burdens in favor of the public." *Id.* This court recognized this as the rule of the common law, which had been adopted in this state. *Id.*

¶ 67                    III. The Recreational Navigation Doctrine

¶ 68       The increase in public recreational use of rivers and streams has not occurred in Illinois due to the archaic and anachronistic common-law rules that restrict public access to state waterways. See Anthony Dan Tarlock & Jason Anthony Robison, Law of Water Rights and Resources § 8:28 (July 2021 Update); Margit Livingston, *Public Recreational Rights in Illinois Rivers and Streams*, 29 DePaul L. Rev. 353 (1980). But several states (Arkansas, California, Idaho, Minnesota, Mississippi, Ohio, Oregon, and Wisconsin) have determined navigability based on a waterway's capacity for recreational use. See *Guilliams v. Beaver Lake Creek*, 175 P. 437, 442 (Or. 1918); *Luscher v. Reynolds*, 56 P.2d 1158, 1162 (Or. 1936); *Southern Idaho Fish & Game Ass'n v. Picabo Livestock, Inc.*, 528 P.2d 1295, 1297-98 (Idaho 1974); *People ex rel. Baker v. Mack*, 97 Cal. Rptr. 448, 454 (Ct. App. 1971); *State v. McIlroy*, 595 S.W.2d 659, 665 (Ark. 1980); *State ex rel. Brown v. Newport Concrete Co.*, 336 N.E.2d 453, 457 (Ohio Ct. App. 1975); *Ryals v. Pigott*, 580 So. 2d 1140, 1150 (Miss. 1990).

¶ 69       In my view, we should adopt the recreational navigation doctrine in Illinois. Clinton Lancaster, *Property Law—The Recreational Navigation Doctrine—The Use of the Recreational Navigation Doctrine to Increase Public Access to Waterways and Its Effect on Riparian Owners*, 33 U. Ark. Little Rock L. Rev. 161 (2011). The doctrine opens a greater number of streams and waterways, once considered private, for use by the public and limits remedies for riparian landowners. *Id.* at 161. The presence of recreational activities, such as fishing and recreational pleasure boating, has been found to be sufficient to sustain a finding that a waterway has a navigable character. As the court observed in *Baker*,

    "[t]he modern tendency *** to hold for use of the public any stream capable of being used for recreational purposes is well expressed in *Lamprey v. State (Metcalf)* (1893) 52 Minn. 181, 53 N.W. 1139, where the court said: '[b]ut if, under present conditions of society, bodies of water are used for public uses other than mere commercial navigation, in its ordinary sense, we fail to see why

- 16 -

they ought not to be held to be public waters, or navigable waters, if the old nomenclature is preferred. Certainly, we do not see why boating or sailing for pleasure should not be considered navigation, as well as boating for mere pecuniary profit.' Lamprey points out that there are innumerable waterways— lakes and streams—which will never be used for commercial purposes but which have been, or are capable of being used, 'for sailing, rowing, fishing, fowling, bathing, skating' and other public purposes, and that it would be a great wrong upon the public for all time to deprive the public of those uses merely because the waters are either not used or not adaptable for commercial purposes." *Baker*, 97 Cal Rptr. at 451 (citing *Coleman v. Schaeffer*, 126 N.E.2d 444, 446 (Ohio 1955), *Hillebrand v. Knapp*, 274 N.W. 821, 822 (S.D. 1937), *Roberts v. Taylor*, 181 N.W. 622, 625-26 (N.D. 1921), and *Muench v. Public Service Comm'n*, 53 N.W.2d 514, 519 (Wis. 1952) (finding that a Wisconsin statute now makes a stream navigable which is capable of floating any boat, skiff or canoe, of the shallowest draft used for recreational purposes)).

¶ 70                          IV. Redefine Navigability to Include Recreational Use

¶ 71          The recreational navigation doctrine encourages states to redefine the word navigability to reflect current uses of waterways. In these states, recreational uses of waterways are deemed as important as any commercial use. Indeed, the trend is to define navigability broadly and to protect the public's right to enjoy a state's waterways. *Southern Idaho Fish & Game Ass'n*, 528 P.2d at 1297-98 (finding that the question of navigation is simply the suitability of a particular water for public use); see Jennifer Jolly-Ryan, *Don't Go Chasing Waterfalls: The Intrepid, Pioneering, Whitewater Paddler's Right to Stop on Private Land*, 17 U. N.H. L. Rev. 129, 149-51 (2018). Because most waterways in Illinois are not navigable under the common-law definition, very few opportunities exist for extensive public recreational use of waterways. Livingston, *supra*, at 366. Thus, expanding the definition of navigability to include the recreational use of waterways would lead to the public use of lakes, rivers, and streams once considered nonnavigable. *Id.* In my view, it is extremely important that the definition of navigability be expanded and that the public be given an easement for recreation.

V. Illinois Public Policy Supports the
                          Recreational Navigation Doctrine

¶ 73        There is no question that the adoption of the recreational navigation doctrine is
supported by Illinois public policy favoring the use of waterways for recreational
purposes. It should be noted that this court, in *People ex rel. Scott v. Chicago Park
District*, 66 Ill. 2d 65, 78 (1976), expanded the public uses protected to adapt to
changing circumstances by recognizing that the public's right is not limited to the
ancient prerogatives of navigation but extend to recreational uses. According to this
court, it is appropriate to observe that there has developed a strong, though belated,
interest in conserving natural resources and in protecting and improving our
physical environment. *Id.* at 78-79. This court observed that the public has become
increasingly concerned with dangers to health and life from environmental sources
and more sensitive to the value and, frequently, the irreplaceability of natural
resources. *Id.* at 79. This is reflected in the enactment of Illinois's Environmental
Protection Act (Ill. Rev. Stat. 1975, ch. 111½, ¶ 1001 *et seq.*) in 1971 and in the
ratification of sections 1 and 2 of article XI of the Illinois Constitution (Ill. Const.
1970, art. XI, §§ 1, 2) by the people. *Scott*, 66 Ill. 2d at 79.

¶ 74        Furthermore, the expansion of the definition of navigability is supported by the
Recreational Use of Land and Water Areas Act, whose purpose is to encourage
owners of land to make land and water areas available to any individual or members
of the public for recreational or conservation purposes by limiting their liability
toward persons entering thereon for such purposes. 745 ILCS 65/1 (West 2020). In
addition, in the Recreational Trails of Illinois Act, the General Assembly found that
recreation is an important industry in Illinois and its growth should be encouraged.
20 ILCS 862/5 (West 2020). The Department of Natural Resources, in developing
recreational areas, has the power to lease from private or public ownership

    "any lands or waters for the purpose of developing outdoor recreational areas
    for public use and to acquire all necessary property or rights-of-way for the
    purposes of ingress or egress to those lands and waters *** necessary or
    desirable for maximum utilization of recreational facilities for public use of the
    areas." 20 ILCS 805/805-230 (West 2020).

The Department of Natural Resources notes the importance of water as the
cornerstone of much of our recreation, from boating, canoeing, and fishing to

skiing, scuba diving, and swimming. Illinois Rivers and Streams, Ill. Dep't of Nat. Res., https://www2.illinois.gov/dnr/education/pages/ilriversstreams.aspx (last visited June 9, 2022) [https://perma.cc/3MV9-R7AV]. Many rivers and streams attract tourists and provide recreational opportunities, and as it is the policy of this State to encourage the use of waterways for any useful or beneficial purpose, I believe that a waterway should be defined as navigable for purposes other than those that benefit commerce.

¶ 75    The shortcomings of the ancient common-law rule, allowing riparian landowners the exclusive rights over the surface waters, have led to the exclusion of the public from lakes, rivers, and streams that do not support commerce. In addition, a riparian owner who has erected fences and barriers has further excluded the public from the recreational use of most Illinois lakes, rivers, and streams. Finally, the common law's definition of "navigability" is inconsistent with this State's public policy.

¶ 76                    VI. A Public Domain Declaration Protects Against
                          Claims of Deprivation of Riparian Rights

¶ 77    I believe Illinois would benefit if the recreational navigation doctrine was codified in a public domain declaration.[2] Lancaster, *supra*, at 174. This would avoid, or at least minimize, litigation by avoiding takings claims related to federal and state constitutional limitations on government condemnation. *United States v. Cherokee Nation of Oklahoma*, 480 U.S. 700, 704 (1987); *Boone v. United States*, 944 F.2d 1489, 1492-93 (9th Cir. 1991). When declarations fall under the public domain assertions, any deprivation of property rights claimed by riparian landowners will be a deprivation of a right they never truly possessed, as the right remained with the state. Lancaster, *supra*, at 174. This will make it difficult for riparian landowners to recover from a state declaration of navigability for

_____

[2]The Nevada statute titled "Water belongs to the public" provides that "[t]he water of all sources of water supply within the boundaries of the Sate whether above or beneath the surface of the ground, belongs to the public." Nev. Rev. Stat. § 533.025 (2021). The California statute titled "Public water of state; appropriation" provides that "[a]ll water flowing in any natural channel *** is hereby declared to be public water of the State and subject to appropriation." Cal. Water Code § 1201 (West 2020).

recreational purposes, as the riparian landowners never held the rights to the waterway usage they claim to have lost by such a declaration. *Id.* Thus, there will be nothing for which the government will be obligated to compensate because of the navigation declaration. *Id.* at 175.

## VII. Legislative Action

The legislature must recognize that the current law is based on anachronistic rules that had their origins in British common law and were promulgated to expand the water rights of riparian landowners and to bar the public from Illinois waterways that did not support commerce. The legislature should redefine navigability to be more inclusive because that would promote the State's interest in recreational uses of waterways for all citizens of the State of Illinois. It is incumbent upon the legislature to realize that there is an increasing social and economic need that riparian rights be restricted for public recreational purposes. See *Port of Seattle v. Oregon & Washington R.R. Co.*, 255 U.S. 56, 63 (1921) (recognizing that each state has full power to declare and shape the riparian rights that will abide within its borders); *Parks v. Cooper*, 676 N.W.2d 823, 838-39 (S.D. 2004) (finding that, "in accord with the State's sovereign powers and the legislative mandate, that all waters within [the State], not just those waters considered navigable *** , are held in trust by the State for the public"). A legislative redefining of navigability in terms of recreational use will represent a beginning toward moving Illinois water law into the twenty-first century. More importantly, it is the legislative process that is the proper method to codify the recreational navigation doctrine so it can be applied to Illinois waterways. See *Mills v. Peoples Gas Light & Coke Co.*, 327 Ill. 508, 536 (1927) (finding that legislation looks to the future and changes existing conditions by making new law to be applied thereafter).

## VIII. Conclusion

Accordingly, I concur in the result reached in today's opinion, but I encourage the legislature to promulgate legislation so that the state's nonnavigable lakes, rivers, and streams are not limited to use by riparian landowners but are available to the public for recreational use.

¶ 82     CHIEF JUSTICE ANNE M. BURKE joins in this special concurrence.